# Fredericks, Appellant, *v.* Pennsylvania Railroad Company.

*Waters—Flooding lands—Dam—Ice jam—Evidence.*

No recovery can be had against a railroad company for the flooding of lands by an ice jam alleged to have been caused by a dam of the company, where the witnesses for the plaintiff were not present at the time of the flood, were not experts, and their testimony was based only on their opinions, without their stating any fact that would indicate in any way that the dam was the cause of the ice jam.

Argued March 15, 1909. Appeal, No. 382, Jan. T., 1908, by plaintiffs, from judgment of C. P. Clinton Co., May T., 1902, No. 212, on verdict for defendant in case of James W. Fredericks et al. v. The Pennsylvania Railroad Company. Before Mitchell, C. J., Mestrezat, Potter, Elkin and Stewart, JJ. Affirmed.

Trespass to recover damages for the flooding of land.

At the trial the jury on binding instructions returned a verdict for defendant.

On a rule for a new trial HALL, P. J., filed the following opinion:

This was an action of trespass in which the plaintiffs sought to recover from the defendant for damages which were sustained to their lands by reason of an overflow of ice and water, during a flood which occurred in Bald Eagle creek, in March, 1902, alleging that the overflow of their lands was caused by an ice jam, which occurred at a point in the creek adjacent to said lands, above a certain dam erected by the defendant company, which it is claimed backed the water for a distance of about two miles and thus caused the ice jam.

Upon the trial the plaintiffs did not produce a single witness who was present, or who saw the flood when it occurred, but sought to show that the dam was the proximate cause of the overflow by the testimony of witnesses who were not there and who were not experts, but who undertook to say because of their acquaintance with the stream and the premises, that it was their opinion that the dam was the proximate cause of the overflow and the consequent damages which ensued. The court held that the evidence of these witnesses was incompetent to fix the responsibility upon defendant company and must be disregarded, and that in the absence of any proof of facts from which the jury might find that the dam was the cause of the injury, there was nothing to sustain a verdict for the plaintiffs, and directed a verdict for the defendant.

The plaintiffs' first to fifth reasons for a new trial are based upon the rulings of the court as to the competency of the opinions of these witnesses as evidence. Their sixth reason goes to the direction of the court to find a verdict for the defendant, and their seventh reason alleges that the court erred in the following portion of its charge to the jury:

"I am, therefore, of the opinion that if these plaintiffs were able to show that the damages which occurred to their land from an ordinary flood in the spring of that year was caused by the fact that this dam was in the stream at that time, that is, if they had been able to show that this dam was the cause of an ice jam which caused the water of the creek to overflow

and damage the plaintiffs' land that the plaintiffs could re-
cover damages from the defendant company in this suit.    But
unfortunately for the plaintiffs they have failed to produce
on this trial any witness who was present and saw that flood.
Under the decision of the appellate courts of this state in order
to recover damages in such a case it is necessary that they
should prove affirmatively to the jury that the dam was in
fact the direct cause of the damage which they suffered.    It is
not sufficient that they should be of the opinion that it was
the dam that caused the damage, they must show facts to the
jury sufficient to satisfy them that it was the actual contribut-
ing cause.    Now as I recollect the testimony in this case the
only thing tending to show that this dam was the cause of the
damage to the plaintiffs' farm is the testimony of three or four
different parties who were not there at the time of the flood
and did not see the damage occur, but who say that it did
occur and that they are of the opinion that this dam must
have stopped the ice from running out of that creek, thereby
causing an ice gorge, which was the occasion of this overflow.
This is their opinion only.    So far as they actually knew, this
ice gorge, which they locate in the bend of the creek up there
against the bluff, may have been caused by the natural loca-
tion and contour of the stream, and might have occurred even
though there had been no dam there, so far as the evidence in
this case shows; and, therefore, under the decisions of our Su-
preme Court I feel it my duty, as a matter of law, to determine
that there is not sufficient evidence in this case to go to the
jury on the question of damages and to direct a verdict for the
defendant."

We are of the opinion that this case is ruled by the case of
Shaw v. Susquehanna Boom Co., 125 Pa. 324, and notwith-
standing the extremely able argument of the counsel for the
plaintiffs, we are unable to see any distinction in principle be-
tween that case and the case at bar.    In that case the plaintiff
called quite a number of witnesses who lived along the river op-
posite the boom for many years, who testified to seeing the jam
and flood which followed it; that there was an opening of only
100 feet between the last pier of the boom and the shore of the

river; that the ice never went out of a part of the boom until spring; that it was jammed for miles down the river from plaintiffs' farm. Certain witnesses who had lived on the bank of the river for fifty years testified that they never saw the ice jam so that the high water would not carry it out, until after the boom piers were built. One witness who had lived alongside the boom for thirty years, and who also knew the river before the boom was constructed, was asked the following question: "Q. From your knowledge and experience, and your knowledge of the action of the river, what do you say caused the ice jam in 1884?" Defendant's counsel objected, because the question asked the opinion of the witness, which is not admissible; the plaintiffs can only show facts, from which the jury are to find the facts; the objection was sustained, and this was one of the grounds of error. The court directed a nonsuit and was sustained by the Supreme Court. The witnesses in that case had vastly greater opportunity to judge than those who testified in this case, for they knew the river before the dam and boom were built; they saw how the ice froze about the piers within the slack water and how it acted and gorged, and many of them were eyewitnesses of the flood. In the present case there was no evidence that any similar ice jam had occurred there, either before or after March, 1902, although the dam had been there since 1835. None of the witnesses could testify as to the action of the stream or of the ice in the flood of 1902, as none of them were there and saw it. All they could do was to express their opinion as to what caused the ice jam and overflow based upon the facts that it had occurred. In the Boom Company case the Supreme Court says: "The witness, Davis, was asked for his opinion as to the cause of the ice jam in 1884. He was not an expert, and his opinion was not competent under the well-settled rules of evidence. It was the business of the jury to find the cause of the jam from the facts given by the witnesses. . . . The portion of the charge complained of is as follows: 'There is no evidence whatever in this case which would justify a jury in finding that the defendant is in any way responsible for the injury complained of by the plaintiff. The motion of the nonsuit is al-

lowed.' An examination of the testimony shows that the learned judge below was entirely accurate in this instruction. There was not a scintilla to show that the works of the boom company had anything to do with the ice jam which caused the injury to the plaintiff's property. . . . They failed to point out any such testimony, and we were practically asked to assume that because there was an ice jam in the river, the works of the boom company were the cause of it. It was entirely proper for the court below to nonsuit the plaintiff; it would have been bald error to submit the case to the jury."

The present case rests entirely upon the testimony of Abram Bittner, J. H. Fredericks, J. W. Fredericks, J. G. Packer and E. G. Laubach. Not one of these witnesses testify to any facts from which the jury could have found that the flood was caused by this dam. Their testimony was only as to their opinions. They did not see the flood or how it acted or how the ice jam was formed, or that any ice jam was formed, nor did they state any fact as to the appearance of the premises, stream or dam that would indicate in any way that the dam was the cause of an ice jam. Their opinions were based entirely upon the fact that the dam formed a pool as high as its comb, which, however, only raised the water to a point within four and one-half feet of the level of the Fredericks' farm, and the opening above the comb was some 300 feet in width. They assume this back flow of water as the cause of the ice jam, though there was no evidence of any ice jam ever having occurred there either before or after, and this was an ordinary flood. Their evidence was given without their having any knowledge of the matter or question practically involved and without any suggestion of their being qualified to know or to testify as to the action of the water in this stream after it got above the height of the dam.

For the reasons under the decision in the case of Shaw v. The Boom Company, above mentioned, we are unable to see that there was any error on the trial or in the direction of the court to the jury.

The rule is, therefore, discharged.

*Errors assigned* were the instructions quoted in the opinion of the court below.

*Max L. Mitchell,* with him *B. F. Geary* and *W. C. Kress,* for appellants.

*T. C. Hipple,* with him *Henry Hipple,* for appellee.

PER CURIAM, May 20, 1909:

The judgment is affirmed on the opinion of the court below.