# Duffy, Appellant, *v.* York Haven Water & Power Company.

*Practice, C. P.—Judgment n. o. v.—Evidence—Act of April 22, 1905, P. L. 286—Waters—Floods—New trial.*

1. The Act of April 22, 1905, P. L. 286, makes no radical change in the law or the relative functions of the court and jury, but broadens the power of the court and authorizes it, where binding instructions have been declined at the trial, to enter such judgment as should have been entered upon the evidence. If it appear that there is a conflict of evidence on a material fact, or any reason why there cannot be a binding direction, then there can be no judgment entered against the verdict. However indisputable may be the proof, when it depends upon oral testimony it is nevertheless the province of the jury to decide.

2. In an action against a water and power company to recover damages to buildings, improvements and crops on an island in the Susquehanna river, alleged to have been caused by the defendant's act in constructing a dam which materially diverted the currents of the river so as to flood the plaintiff's island when the ice on the river broke up, it is reversible error for the court to enter judgment for defendant non obstante veredicto, where the evidence for the plaintiff, although contradicted by that of the defendant, tended to show that the dam erected by the defendant contributed materially to the plaintiff's injuries.

Argued May 22, 1911. Appeal, No. 8, May T., 1911, by plaintiffs, from judgment of C. P. Dauphin Co., March T., 1906, No. 161, for defendant non obstante veredicto in case of James Duffy et al. *v.* York Haven Water & Power Company. Before FELL, C. J., BROWN, MESTREZAT, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Trespass for injuries to improvements and crops. Before McCARRELL, J.

The facts are stated in the opinion of the Supreme Court.

At the trial the jury returned a verdict for plaintiffs for

$13,785. Subsequently the court entered judgment for defendant non obstante veredicto.

*Error assigned* was in entering judgment for defendant non obstante veredicto.

*John R. Geyer* and *Bernard J. Myers,* with them *John E. Malone* and *John E. Fox,* for appellants.—It was error to enter judgment n. o. v.: Dalmas v. Kemble, 215 Pa. 410; Edwards v. Woodruff, 25 Pa. Superior Ct. 575.

*Charles L. Bailey,* of *Wolfe & Bailey,* for appellee, cited: Shaw v. Susquehanna Boom Co., 125 Pa. 324.

OPINION BY MR. JUSTICE MESTREZAT, July 6, 1911:

The plaintiffs are the owners of an island in the Susquehanna river, known as "Three Mile Island" or "Duffy's Island," which is about 1,800 feet wide at its greatest width and about three miles in length. It is in Dauphin county, and its upper point is about two miles south of Middletown and its lowest point is about the beginning of the Conewago falls. The line between Dauphin county and York county at this place is at low water mark on the western side of the river. At Middletown the river bends sharply and flows thence almost due south to the falls. Between Middletown and the falls there are several islands, the largest of which is Duffy's island. Shelly's island lies to the west of Duffy's island. At the head of Duffy's island the current divides, part flowing straight between Duffy's island and Shelly's island, part flowing west of Shelly's island and between it and the York county shore, and part flowing in a narrower and shallower channel, with two curves, east of Duffy's island and between it and the Dauphin county shore. The eastern channel varies in width from 700 to 1,000 feet. Duffy's island is separated from the York county shore by a channel about 2,000 feet wide. The river narrows very much at the southern end of Duffy's

island, and passes over Conewago falls at a descent of more than twenty feet in a mile.

At York Haven, just below the falls and about a mile below the foot of the island, the defendant erected, in 1902 and 1903, a power house and a dam. The dam in 1904 consisted of a wall about 300 feet long at right angles to the shore at York Haven, a similar wall some 3,100 feet long, extending eastwardly and diagonally across the river at the falls, with its northern end about 500 feet from the west shore, and crib work of logs and stones extending beyond the end of the wall to a point about 1,000 feet west of Duffy's island. The wall was of solid masonry, about twenty-five feet high, about six feet wide at the top, and about sixteen or eighteen feet wide at the bottom.

The winter of 1903–1904 was very severe in that vicinity, and the ice in the river was very heavy. It formed, broke and went out several times, but the river was never entirely clear at any one time. In March, 1904, the island was flooded with ice and water, destroying the plaintiffs' buildings, farming implements, fences and other personal property, damaging the crops in the ground and removing the surface soil from the island. This action was brought to recover damages for the injuries thus resulting to the plaintiffs' premises. The plaintiffs claim that the construction of the dam materially diverted the currents of the river and the ice and debris carried by these currents, and modified the quantity and character of the water surrounding the plaintiffs' island, so that when the ice which formed in the river in 1904 broke, instead of moving off as it ordinarily had done through the unobstructed bed of the river, it was diverted and gorged to such an extent as to cause a rapid rise in the water, completely flooding the plaintiffs' premises with water and large quantities of ice, and that when the gorge finally broke about March 8, 1904, the accumulated water and ice swept over the plaintiffs' island and did the injury above stated. The defendant contends that the whole

river was gorged with ice, from a point four or five miles below the Conewago falls up to and including the falls; that there was no gorge at the dam; that when the break-up came the ice in the western channel gave way first; and that the injury to the island was due to the fact that the falls themselves and the eastern channel were gorged. The learned court submitted the case to the jury, and they returned a verdict for the plaintiffs. The defendant moved the court for judgment non obstante veredicto, under the Act of April 22, 1905, P. L. 286. The motion was granted, and judgment was entered for the defendant. The plaintiffs have taken this appeal. The single question is whether there was sufficient evidence to warrant the court in submitting the case to the jury.

The act of 1905 authorizes the court to enter judgment non obstante veredicto where a request for binding instruction has been declined on the trial. As we have time and again said, this act makes no radical change in the law or the relative functions of the court and jury, but broadens the power of the court and authorizes it, where binding instructions have been declined at the trial, to enter such judgment as should have been entered upon the evidence. If it appear that there is a conflict of evidence on a material fact, or any reason why there cannot be a binding direction, then there can be no judgment entered against the verdict: Dalmas v. Kemble, 215 Pa. 410. However indisputable may be the proof, when it depends upon oral testimony it is nevertheless the province of the jury to decide: Reel v. Elder, 62 Pa. 308.

We think the learned court erred in entering judgment for the defendant. As said in the charge, the question for determination by the court and the jury was whether or not the acts done by the defendant in the construction of its wing dam and the crib wall extending therefrom resulted in or contributed to the injury to the plaintiffs' property. The issue was a very narrow one. The plaintiffs contend that the dam obstructed the natural currents of the river and that the ice accumulated until it

extended up the river beyond the head of Duffy's island, and when the thaw came and the ice broke it was thrown into the eastern channel and by reason of the size and character of that channel it was diverted westwardly across the plaintiffs' premises. The defendant, on the other hand, contends that the river was filled with ice from shore to shore from a point below the falls up beyond the island, and that the dam was not the cause of the ice being diverted from the main channel into the eastern channel. It is further claimed that the Conewago falls and the eastern channel were, like the other parts of the river, entirely filled with ice.

Under the evidence the jury would have been justified in finding for either party. But in considering the motion for judgment for the defendant non obstante veredicto, the defendant's contradictory testimony is eliminated, and the question is whether the evidence submitted, if believed, was sufficient to warrant the jury in finding a verdict for the plaintiffs. The plaintiffs' witnesses testified that before the construction of the dam the main channel of the river was west of Duffy's island, that ice ordinarily passed off through that channel, and that the effect of the dam was to change the current, making the water west of the island dead and throwing the main current to the east. Several witnesses testified that there was a gorge of ice at the dam, many feet high, and completely blocking the openings in the dam and between it and the island; that the gorge extended from the dam several miles up the river; that the eastern channel was filled with ice and closed, there being little or no water in it, but that it was not gorged as was the western channel; that the falls were partly clear of ice, some of the witnesses saying that they were practically open and clear of ice. The result of this testimony, if believed, would be to sustain the contention of the plaintiffs that the dam obstructed the natural flow of the water and caused the ice to gorge from the dam up the river above Duffy's island, and that when the break came the ice which had accumulated

above the island was diverted into the eastern channel which, while frozen to the bottom, was not gorged with ice; and that the falls were open. An expert witness was called and he, having heard the plaintiffs' testimony as to the conditions existing at the time the premises were injured, testified that in his opinion the dam materially contributed to the gorge and damage done the plaintiffs.

Several witnesses for the plaintiffs saw the occurrences from different points on the river from March 4 to March 8, and they described the movement of the ice which began with the breaking away of the ice jam at Swatara Riffles, which was between the mouth of Swatara creek and the head of Duffy's island. They say that the ice first moved in a southwesterly direction toward Goldsborough, then came back and passed down the channel to the east of Duffy's island and, finding no outlet through that channel, passed across the island in the same southwesterly direction, doing the damage complained of. While the opportunity of some of these witnesses for observing what they testified to may have been more or less limited, yet this affected the weight and not the competency of the testimony and was for the jury. In addition to this, several witnesses testified that there had never been a gorge at the falls before the dam was built. While the flood may have been unprecedented, yet this was some evidence for the jury to consider in determining whether the dam contributed to the gorge which resulted in the plaintiffs' injury. It was also testified that for some distance above the dam the flood levels before the gorge broke were above the highest on record, increasing as the points were nearer the dam and that below the dam the highest levels were after the gorge broke. This testimony would assist the jury in determining the question whether the point of stoppage of the ice was at the dam, or below, as contended by the defendant.

Without referring further to the testimony, we think the learned judge was right in submitting it to the jury

on the question at issue between the parties. If believed, it tended to show that the dam erected by the defendant company in the river contributed materially to the plaintiffs' injuries. In his opinion, the learned judge apparently thought it was his duty on the motion for judgment non obstante veredicto to determine the question on the preponderance of evidence and to draw inferences from the testimony produced on the trial. In one part of the opinion he says, arguendo: "It certainly can be said that this proposition was sustained by the weight of the evidence;" and in another part of the opinion: "It might naturally be inferred that this condition diverted the water and ice from the channel and caused the injury. Such inference would be much more probable than that the crib dam of the defendant 2,800 feet distant was the producing cause." Neither of these matters was a question of law, but both were exclusively for the jury to whom they had been submitted and had been found in favor of the plaintiffs. It is exclusively the province of the jury to determine the weight of the evidence as well as to draw inferences from facts shown by the evidence. The court can consider neither on a motion for judgment non obstante.

It was contended by the defendant that there was a large open space between the end of the wall and the beginning of the crib dam, that there was an opening near the beginning of the stone wall, and that these openings in addition to the opening of 1,000 feet between the end of the crib dam and Duffy's island were sufficient to permit the water and ice to pass through if the gorge had not begun below the falls and extended up to the dam. Many witnesses were introduced on the part of the defendant to sustain this contention and, as has been said, the jury would have been justified in finding that the dam did not contribute to the plaintiffs' injuries by causing the gorge and the overflow of the island, but that was not the question which the learned judge had before him on a motion for judgment non obstante. He could consider all those

matters in passing upon the defendant's application for a new trial, but not on a motion for judgment notwithstanding the verdict.

It appears from the record that the motion for a new trial made by the defendant has not been disposed of. We will, therefore, not direct judgment to be entered on the verdict, but reverse the court in granting the judgment notwithstanding the verdict, and award a procedendo, so that the court may consider and dispose of the pending motion for a new trial.

The judgment is reversed with a procedendo.