James et ux. *v.* Columbia County Agricultural, Horticultural and Mechanical Association, Appellant.

Argued March 4, 1935.

Before KELLER, P. J., CUNNINGHAM, BAL-
DRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Frank P. Slattery,* with him *Evan C. Jones* and *E. J. Mullen,* for appellant.

*R. S. Hemingway,* for appellee.

OPINION BY STADTFELD, J., April 15, 1935:

The defendant is a corporation of the first class with its principal office and place of business in the town of Bloomsburg, Pennsylvania. At the time of the happening complained of in this suit, to wit: On September 25, 1930, the defendant owned, maintained and operated fair grounds in said town of Bloomsburg, and in connection therewith maintained and operated thereon a race course and race track for the racing of running and trotting horses.

The grounds of this association are large and commodious and at the times of the annual fair are visited by large numbers of persons. The race track proper is within the grounds of the association and is separated from the balance of the fair grounds by a substantial fence, or rail. There is a large and commodious grandstand on the southern side of the race track

for the convenience of persons who desire to see the races from this stand. The exhibition buildings, concessions, amusements, etc., are on the portion of the fair grounds not included within the race track.

On the 25th of September, 1930, the annual fair was in progress. The association had advertised several races for the afternoon of that day. Among others, a half-mile running race was advertised. Some rain had fallen in the forenoon of that day and in the afternoon, after conditioning the track, this running race was called. There were ten starters in the race. At or near the quarter post, one of the horses fell and threw its rider. This horse was subsequently caught near the grandstand. At the turn just beyond the halfway post of the track, another horse fell and threw its rider. This horse got up and started around the track following the other horses in the race. It did not stop at the grandstand, but continued around the track two additional times with the hood which it wore in the race partially down over its eyes and nearly obscuring its vision. On the third time around at the turn on the right of the grandstand, it swerved to the outer rail of the track and jumped or fell over it and among a number of spectators who were standing at the fence or in a roadway near the fence on the outside of the race track rail. Among others who were injured by this horse was Ursula E. James, a paid patron of the defendant, one of the plaintiffs, who it is alleged sustained severe injuries.

Subsequently, Ursula E. James and Bartholomew J. James, her husband, brought an action of trespass for negligence against the fair association for the injuries alleged to have been sustained by them by reason of the horse having struck and injured Mrs. James, and in their statement and amendment to statement of claim set forth the grounds of negligence as follows: (a) In conducting and permitting to be run a running

race on its race course or race track when the same was wet, muddy, slippery and unfit for such a race. (b) In failing and neglecting to properly police and marshal said race course or race track during the progress of said running race. (c) In failing and neglecting to properly police and marshal said race course and race track after an accident had occurred in said running race and one of said horses was running around said track riderless and uncontrolled. (d) In failing and neglecting to maintain between said race course or race track and said road way or passage way a fence of sufficient height and strength and of proper construction to prevent racing horses and especially said running horses from leaping or getting from said race track or race course into said road way or passage way. (e) In failing and neglecting to properly safeguard the life and limb of the plaintiffs and the public on said fair grounds and near said race track under the circumstances.

The defendant filed an affidavit of defense denying these allegations of negligence and upon the issues thus made, the case was tried before a jury.

Upon the trial, voluminous testimony was taken both upon the part of the plaintiffs and upon the part of the defendant with reference to these different allegations of negligence. At the conclusion of the evidence, defendant submitted a point for binding instructions in favor of defendant, which was declined by the court without reading, and the case was submitted to the jury. The court below in its charge submitted same to the jury on all of the allegations of negligence.

The jury returned a verdict which was moulded by the court below as follows: ''And now, to wit: October 17, 1933, we, the jurors empaneled in the above entitled case, find the Columbia County Agricultural, Horticultural and Mechanical Association guilty of negligence in not properly marshaling the race track on Sept. 25,

1930, when the running race was run and the horse jumped over the fence and injured Ursula E. James.

"Therefore we award damages as follows: Bartholomew J. James the sum of $1,000 and Ursula E. James, his wife, the sum of $1,000."

Within the proper time defendant filed motions for entry of judgment n. o. v. for defendant, and plaintiffs filed a motion for a new trial. The defendant contended upon the argument of its motions for judgments n. o. v. that as it had submitted a point for binding instructions upon the trial, which point was refused by the court, and as the court below had submitted five distinct allegations of negligence to the jury and the jury had found defendant guilty only upon one act of negligence, to wit: in not properly marshaling the race track when the running race was run and the horse jumped over the fence and injured Ursula E. James, the jury had thereby absolved defendant from all the other allegations of negligence. It further contended that upon these motions for judgment n. o. v. the court should exclude consideration of the testimony introduced at the trial upon the allegations of negligence which had been negatived by the verdict of the jury, and confine itself solely to consideration of the question as to whether there was any competent evidence to convict defendant of negligence in not properly marshaling the race track, and that so confined, there was not any competent evidence to convict defendant of negligence in not properly marshaling the race track, and that defendant's motions for judgment n. o. v. should prevail. These motions were overruled and dismissed by the court below in an opinion by EVANS, P. J., as was also plaintiffs' rule for a new trial, which was discharged and a new trial refused.

Judgments were entered upon the verdicts in favor of plaintiffs. From the judgments entered, these appeals were subsequently taken to this court.

The assignments of error relate to the refusal of binding instructions and the subsequent refusal to enter judgment in favor of defendant non obstante veredicto.

Appellant contends that the jury by its verdict had found defendant guilty of but one act of negligence, namely, in not properly marshaling the race track when the running race was run and the horse jumped over the fence and injured Mrs. James, and had absolved it from all of the other allegations of negligence, and therefore the court should consider only the evidence produced at the trial relative to the marshaling of the track and should exclude from consideration all the evidence produced upon the other allegations of negligence. With this contention we can not agree.

In construing the Act of April 22, 1905, P. L. 286, Sec. 1, as amended by the Act of April 9, 1925, P. L. 221, Sec. 1, 12 PS Sec. 681, governing the entry of judgment non obstante veredicto, the Supreme Court said, in Dalmas v. Kemble, 215 Pa. 410 (412): "He (the trial judge) is 'to enter such judgment as should have been entered upon that evidence,' or in other words to treat the motion for judgment as if it was a motion for binding directions at the trial, and to enter judgment as if such direction had been given and a verdict rendered in accordance. What the judge may do is still the same in substance, but the time when he may do it is enlarged so as to allow deliberate review and consideration of the facts and the law upon the whole evidence. If upon such consideration it shall appear that a binding direction for either party would have been proper at the close of the trial the court may enter judgment later with the same effect. *But, on the other hand, if it should appear that there was conflict of evidence on a material fact, or any reason why there could not have been a binding direction then*

*there can be no judgment against the verdict now.* As already said there is no intent in the act to disturb the settled line of distinction between the provinces of the court and the jury. The act is capable of usefulness in allowing time for mature consideration, but it should not be carried beyond its legitimate intent." (Italics supplied). To same effect, Roberts v. Washington Trust Co., 313 Pa. 584, 170 A. 291.

Where the court could not properly have given binding instructions at the close of the evidence, it can not enter judgment n. o. v. thereafter. Hardoncourt v. N. Penn Iron Co., 225 Pa. 379, 74 A. 243; Duffy v. York Haven W. & P. Co., 233 Pa. 107, 81 A. 908; Schwarz v. Glenn, 244 Pa. 519, 90 A. 921.

On the defendant's motion for judgment n. o. v., the testimony should not only be read in the light most advantageous to the plaintiffs, all conflicts therein being resolved in their favor, but they must be given the benefit of every fact and inference of fact pertaining to the issues involved which may reasonably be deduced from the evidence. Galliano v. E. Penn Electric Co., 303 Pa. 498 (508), 154 A. 805; Christ v. Hill Metal & Roofing Co., 314 Pa. 375 (378), 171 A. 607; Uhler v. Jones, 78 Pa. Superior Ct. 313 (315); Malchinsky v. Mutual Life Ins. Co., 90 Pa. Superior Ct. 1 (8); Chew v. P. R. T. Co., 90 Pa. Superior Ct. 155 (156).

A careful reading of the testimony convinces us that there was sufficient evidence to make it necessary to submit the case to the jury. The testimony discloses that on the afternoon in question, there was on the track a mounted marshal by the name of Hatzell, employed by the defendant association, whose duty it was to supervise, police and marshal the track. Richard A. McHale, a witness on behalf of plaintiff, testified that he had been interested in horses and horse racing for upwards of fifty years, and for ten or twelve

years had acted as official timer at various fair grounds; that the marshal was the "boss of the track"; that he saw no effort whatever made to catch the runaway horse, or to keep it on the inside of the track where it could not inflict injury on any of the patrons on the fair grounds; that he saw no mounted marshal on the track at any point where you could see him from the grandstand. Mr. Correll, one of the officers who had charge of the racing, testified that he was in the judges' stand where he could see the entire track, and he did nothing in the way of having this marshal or any of the defendant's employees attempt to catch the horse, or keep him on the inside of the track where he could do no harm; that the duty of the mounted marshal is to keep the people off the fence and keep them from going out on the track; that they have another marshal for the purpose of calling in the horses for the races.

There was a number of witnesses on behalf of plaintiffs who testified that where the horse fell there was a muddy, slippery place on the track. One of plaintiffs' witnesses, Tilman H. Paul, a licensed starter, testified that this condition would make the track unfit for running races. There was also testimony to the effect that the fence between the race track and the roadway was not of sufficient height to prevent race horses from leaping into the roadway or passageway. Under all the testimony, it was the province of the jury to decide whether the defendant had exercised such care as a reasonably prudent person would exercise under the circumstances. It would have been error to have given binding instructions in favor of defendant. A judgment non obstante veredicto could not therefore follow.

The verdict in this case was not a "special verdict." The character of a "special verdict" is defined in McCormick et al. v. Ins. Co., 163 Pa. 184, 189, 29 A.

747, as follows: "In Wallingford v. Dunlap, 14 Pa. 31, it is said: 'A special verdict is when the jury find the facts, leaving the ultimate decision of the cause, upon those facts, to the court, concluding conditionally that if, upon the whole matter thus found, the court should be of opinion that the plaintiff has a good cause of action, they then find for the plaintiff and assess his damages; if otherwise, they then find for the defendant.' Nothing is better settled, on principle as well as authority, than that all the facts upon which the court is to pronounce judgment should be incorporated in the special verdict. It is the exclusive province of the jury, in the first place, to determine all disputed questions of fact, from the evidence before them; and then their special verdict is made up of those findings of fact, together with such undisputed facts as may be necessary to a just decision of the cause." See also Sewing Machine Co. v. Royal Ins. Co., 201 Pa. 645, 51 A. 354; Panek v. Scranton Ry. Co., 258 Pa. 589, 102 A. 274.

We see no error in the disposition of the case made by the lower court. The assignments of error are overruled and judgments affirmed.