SHANE v. COMMERCIAL CASUALTY
INS. CO. et al.

No. 941.

District Court, E. D. Pennsylvania.

June 11, 1942.

Langdon W. Harris, Jr., of Philadelphia, Pa., for plaintiff.

Samuel S. Herman, of Philadelphia, Pa., for garnishee.

GANEY, District Judge.

This matter comes before the Court on a motion for judgment n. o. v. as well as on a motion for a new trial, both of which will be considered separately. The facts of the case show that on or about February 12, 1940, Thomas Barger, who was employed as a truck driver, happened to stop his truck at a street intersection in the City of Trenton and noticed the automobile of one, Dr. James Burns, of that City, which was being driven at the time by his secretary, a Miss White, was along side his car. He saw that a fender was in need of fixing and upon asking her whether he could fix it she referred him to Doctor Burns. In the course of a day or so he called Doctor Burns in connection therewith, and later went to his office and asked him about fixing the fender on the automobile, which was a 1937 Dodge automobile, the back fender of which had a broken bracket and was bent. Doctor Burns gave the keys to Barger, directing him to take and fix the car, the exact instructions concerning which are conflicting in that the testimony shows in one instance that he was to fix and repair the fender, and in another place that nothing at all was said whether he should replace or repair it. Pursuant to this conversation with Doctor Burns, Barger took the car to one Richard Tyndall, who was engaged in the body and fender business, where he intended to have the necessary work done, and on account of the price which Tyndall wanted he took the car to the Fair Grounds in Trenton, where he did the work himself. Unable to complete the work before that evening, he returned with the car to Doctor Burns' office at about 6:30 P. M., at which time he explained to him that it was impossible for him (Barger) to finish the job, and inquiry was made of the Doctor as to whether he should leave the car with him. Doctor Burns then instructed him to take his sister to East Trenton and afterward to take the car back and to finish the job, which he wanted done by the next morning around 9:30 or 10:00 o'clock. Barger took Doctor Burns' sister to East Trenton and then returned to his home and early the next morning he left with the car at about 4:30

A. M. for Philadelphia in order to get a new fender, and while en route to the City of Philadelphia, due to a blinding snow storm, he struck the plaintiff, severely injuring him. The plaintiff, Joseph Shane, brought suit against Barger and a verdict of $40,000 was entered on his behalf. Pursuant to the securance of this judgment, plaintiff brought this attachment execution by reason of a certain policy of insurance which the garnishee, the Commercial Casualty Insurance Company, had with the owner of the car, Doctor Burns, the pertinent portions of which policy are as follows:

"III. Definition of 'Insured'. The unqualified word 'insured' wherever used in Coverages A and B and in other parts of this policy, when applicable to these Coverages, includes not only the named insured but also any person while using the automobile and any person or organization legally responsible for the use thereof, provided that the declared and actual use of the automobile is 'pleasure and business' or 'commercial', which is defined herein, and provided further that the actual use is with the permission of the named insured. The provisions of this paragraph do not apply:

\* \* \* \* \* \*

"(c) to any person or organization, or to any agent or employee thereof operating an automobile repair shop, public garage, sales agency, service station, or public parking place with respect to any accident arising out of the operation thereof."

The garnishee's motion for judgment n.o.v. is based on the contention that the defendant, Thomas Barger, while driving the automobile of the insured, Doctor Burns, was not covered by the terms of the policy in that it is denied that the use of the car at the time and place of the accident was with the permission of the named assured, and for the further reason that his employment at the time was such as to make the policy inapplicable to him.

In making disposition of the motion for judgment n.o.v., recourse must be had to the testimony to find out just what the instructions were in connection with the use of the automobile of Doctor Burns by the defendant, Thomas Barger. If, of course, the facts clearly show that no permission was had by Barger to use the car at the time of the accident, then the use

thereof was not with the permission of the assured and the motion for judgment n. o. v. would be in order. However, an examination of the record discloses that there was a conflict as to the actual instructions with respect to the use of the car, in that Doctor Burns testified that the defendant, Barger, was to take the car and fix and repair it, while the defendant, Barger, said at one place in his testimony there were no instructions whether to replace or repair the fender. Again, there is testimony by Doctor Burns that the car was to be taken home and finished, while the defendant Barger's testimony at one point was that "he said I could keep the car until I finished and he wanted the car finished for sure by the next morning" (p. 13). This conflict in the testimony was a matter which only a jury had the right to resolve and not for the Court to determine and say as a matter of law what the facts were concerning the exact nature of the duties to be rendered by Barger. The garnishee also contends that under all of the evidence of the case there was such a deviation from the instructions given which brought the driver of the car outside the terms of the policy. With this contention I likewise disagree. The contract of insurance to be here construed was entered into in New Jersey by a resident of New Jersey with a company in New Jersey, and it is a familiar rule of law that the construction and validity of a contract is governed by the law of the place where it is made. Here, as has been indicated, the domicile of the parties, the place of execution and performance are confined throughout to the jurisdiction of New Jersey, and accordingly the construction which the New Jersey courts place upon the contract is the one to be adopted in this form. 5 R.C.L. 931: Evans v. Cleary, 125 Pa. 204, 210, 17 A. 440, 11 Am.St.Rep. 886.

As I view the case, the inquiry here concerns itself with (1) what were the instructions, (2) was there a deviation from instructions, and (3) if so, did such deviation as the evidence discloses, serve to end the driver's permission to operate the car? If we examine the authorities in New Jersey, we find that Rikowski v. Fidelity & Casualty Company, 117 N.J.L. 407, 189 A. 102, 104, is directly contra to the defendant's contention here. In that case, the chauffeur of a car deposited his employer at Bamberger's Department Store with instructions from the owner to park the car, as there was no parking place immediately available, and return for her within an hour. After leaving her off and driving for a few blocks, he picked up some friends of his and took them to their home, and while so doing drove into and injured the plaintiff. In the suit which followed, it was contended by the insurance company that there was such a deviation from instructions given that no liability could be imposed on the company under the terms of the policy. However, a judgment was obtained by the plaintiff, and the Court of Errors and Appeals affirmed the judgment of the Lower Court, Rikowski v. Fidelity & Casualty Company, 116 N.J.L. 503, 185 A. 473, holding that in the first instance, since permission to use the car was given to the driver, that "under the facts of the case and within the meaning of the policy such deviation from instructions as the evidence discloses did not serve to end the driver's permission to operate the car". In Penza v. Century Indemnity Company, 119 N.J.L. 446, 197 A. 29, it is contended by the garnishee that the New Jersey authorities repudiate the doctrine of "initial permission" which is good until the vehicle is returned. However, an examination of the facts in that case shows that the defendant, a chauffeur, was given definite instructions by the owner to take his automobile to the defendant's boarding house and park it in the rear thereof, due to the fact that the defendant had told the owner that he had a bad cold and wished to go to bed. The defendant took the car to his boarding house, parked it and more than an hour later, feeling better, came out of the house and took the car on a ride of his own during which he collided with and injured the plaintiff. In this case, it will be noted that the permission granted to the defendant to take the car home and to park it had ceased at the time of the injury to the plaintiff for the reason that after the defendant took the car to his boarding house and parked it there, pursuant to the instructions given by its owner, the permission granted was exhausted and his leaving the house after an hour and taking the car for a pleasure ride of his own was an embarking on a new enterprise having no remote connection with his owner's instructions. I think there is nothing in this case which in any wise impairs the doctrine of the Rikowski case, supra, but in fact it will be noted it quotes the same with approval.

■ In the instant case, as has been said above, it was properly decided by the

Trial Judge to submit to the jury the question of exactly what the instructions were and for them to make a factual finding thereon, for if the Court were to say what the instructions were it would be substituting itself for the jury, since under the Act of April 22, 1905, P.L. 286, 12 P.S.Pa. §§ 681–683, judgment cannot be entered notwithstanding the verdict where the evidence on material facts is conflicting. Hobel v. Mahoning & S. Ry. & Light Co., 233 Pa. 450, 82 A. 754; Dalmas v. Kemble, 215 Pa. 410, 64 A. 559; Duffy v. York Haven Water & Power Co., 233 Pa. 107, 81 A. 908.

Much has been made by the defendant that whether or not permission exists is to be determined as of the time of the casualty and not as of the time of granting consent. To say "actual use" as used in the policy here in question refers to the time of the casualty and not to the "time of granting consent" advances us, here as in most cases, very little. For whether permission has been granted to the defendant to be where he is at the time of the casualty is largely dependent on his instructions at the time of the granting of the consent to him by the owner of the car to take it. A jury might well find, as they did here, that the instructions given to Barger at the time of his taking the car from Doctor Burns with his consent were such as to have given him permission to use the car at the time of the accident.

The garnishee both in the argument and in his brief takes the inconsistent position that both the law of New Jersey and the law of Pennsylvania rules the instant case as he cites both Pennsylvania and New Jersey authorities in support of his contention. While citing the New Jersey cases, including Rikowski, etc., supra, defendant relies also on the case of Brower v. Employers' Liability Assurance Co., Ltd., 318 Pa. 440, 177 A. 826, 830, as governing the interpretation of the contract of insurance. In that case a car was given to a mechanic to get rid of a noise and rattle in it and while in the possession of the mechanic he deviated from this specific purpose, to take some people to a wedding in Bloomsburg which had no connection in any wise with the purpose of the bailment. The Supreme Court of Pennsylvania held that the extent of the deviation took the matter "outside the zone of doubt" and that the Court below as a matter of law should have decided there was no liability under the terms of the policy which was similar to the one here involved. Taking this case which the plaintiff relies on—and which I hold is of no application here—the facts differ so widely from the instant case that hardly any analogy can be drawn to support the garnishee's position. In the Brower case there was an admitted deviation from the instructions or permission granted, going to Bloomsburg on a wedding, while the car was given for the purpose of eliminating a noise and rattle in the car. In our case, at the time of the casualty, there was at least testimony that would bring it within the "zone of doubt" inasmuch as Barger testified that he was enroute to Philadelphia to secure a fender for Doctor Burns car. In that case, as the Court said, "there was no necessity to go to Bloomsburg", whereas in the instant case, as has just been adverted to, it was at least possible for a jury to find from the evidence that at the time of the casualty he was within the instructions originally given him, and some corroboration is lent to his statement when we consider the earliness of the hour at which he left Trenton to go to Philadelphia in order that he might be back by 9:30 or 10:00 o'clock in the morning of the same day.

◼ The garnishee also contends that the other provision in the policy making it inapplicable to any person "operating an automobile repair shop, public garage, sales agency, service station or public parking place" leaves the plaintiff with no remedy against the insurance company. This for the reason that the garnishee relies on the Brower case, supra, wherein the Court said: "In using the term 'automobile repair shop' the policy did not mean an inanimate thing, but it was intended to exclude those engaged in the business of repairing automobiles, as this mechanic was, and under the most restricted use given to the words of the policy a repair man of automobiles, engaged in that business, was intended to be excluded from the risks assumed by the indemnity companies". Here again, even if we make the assumption that the Brower case would be here applicable, the facts in the instant case do not come within the doctrine there laid down, for the testimony does not show that Barger was "engaged in the business of repairing automobiles" or "a repair man of automobiles, engaged in that business". The testimony shows that the principal business of Barger was that he was a driver of trucks, that he did odd jobs of house-painting, and that

on occasion he did some work to automobiles, and further that this was the only job on an automobile he had done within the past year. I hold that the Trial Judge was quite proper in submitting this question to the jury to make decision on, in that it would have been improper for the Court to usurp the function of a jury by saying as a matter of law from the testimony that Thomas Barger was engaged in the business of repairing automobiles or a repairman of automobiles engaged in that business.

I therefore feel that the matter was a proper one for a jury to pass upon, and accordingly motion for judgment n. o. v. is denied.

Counsel for the garnishee has assigned a number of rulings of the Trial Judge as error which will be considered separately.

█ (1) It is alleged the Trial Judge erred in his refusal to withdraw a juror because counsel for the plaintiff mentioned the amount of the judgment awarded to the said Joseph Shane against the defendant, Thomas Barger, in that suit, and further to the admission in evidence of the record of the prior trial, thus disclosing the amount of the judgment, which appertains to the garnishee's objection just stated. In considering the nature of an attachment execution, it is found that it, of necessity, issues on the judgment obtained; and, as has been held by the court, that as to the judgment on which it issues it is a species of execution process and accordingly no harm is done by stating the amount of the judgment obtained as of necessity it is part of the plaintiff's case. In discussing the nature of a judgment execution, the Court in Kennedy v. Agricultural Insurance Company of Watertown, 165 Pa. 179, 30 A. 724, 725, says: "In the judgment on which it issues, it is a species of execution process; but as to the garnishee, who becomes a party defendant therein, it is an original process,—a summons commanding him to appear and show cause, if any he has, why judgment in favor of the plaintiff should not be levied on the goods and effects of the defendant in his hands". I hold that the Trial Judge committed no error in failing to withdraw a juror nor in admitting in evidence the record of the prior trial.

█ (2) Error is also assigned by reason of the Trial Judge's ruling that Thomas Barger might be called as of cross-examination. In support of the garnishee's contention it cites Dinger v. Friedman, 279 Pa. 8, 123 A. 641, 643. Here the Court says: "In determining the character of the interest of a person called to testify, the substantialities of the situation, not mere technical reasoning, control." Here it seems to me nothing could be more apparent than that the substantialities of the situation showed that Barger was an adverse witness. Here in this proceeding, as was indicated in the Kennedy case, supra, was a defendant, against whom a judgment had been obtained, on which judgment the attachment herein issued, which as to him was a species of execution process which makes him an adverse witness within the meaning of the Act of May 23, 1887, as amended by the Act of March 30, 1911, P.L. 35, 36, 28 P.S.Pa. § 381 and accordingly it was proper to ask of Barger his purpose of going to Philadelphia as set out in the garnishee's eighth assignment of error, as well as to ask him whether he operated a garage as set out in garnishee's seventh assignment of error.

█ (3) The errors set out in the garnishee's ninth assignment are denied as they were proper questions to be asked of Barger, to wit, whether he operated a garage and repair shop, a sales agency, a service station, etc., since all of these were set forth in the policy as occupations which would have excluded recovery under the policy, and further, since they were definitely set up in the answer which the garnishee filed.

█ (4) The next assignment of error is the exclusion by the Trial Judge of the following sentence and answer, a portion of a statement dated February 17, 1940, given by defendant Thomas Barger sometime previous to trial concerning which counsel for garnishee asked defendant Barger: "It was agreed that I repair this fender for the amount of $4.50 and at the time of this accident I was on no errand for the doctor or business for him. His answer to that was 'Yes'." It is important here to note exactly that upon which the Court ruled. The whole statement was not offered in evidence by counsel, but portions as here were read therefrom and the witness asked concerning each. This was permitted only on the ground that the questions in the statement which were asked of the witness Barger were such as would test his credibility, since all of them pertained directly to certain testimony which he had given under examination by counsel for the plaintiff. However, whether he said in the statement

that at the time of the accident he was on no "errand" for the doctor or "business" for him could in no wise be treated as testing his credibility, which was the ground on which counsel sought to have it admitted, for the witness, Thomas Barger, had never testified up to that time that he had been on an "errand" for the doctor or "business" for him. So counsel's contention that he was asking it for the purpose of testing his credibility falls, the more so because the record shows that counsel for the garnishee asked the witness Barger: "Were you on your own business? I withdraw that. I won't let you draw the conclusion." In other words, if counsel had not withdrawn the question, and the witness had said, "No, I was not on my own business", then the question might have been proper to test his credibility, against the statement he signed in writing, that he was on no errand for the doctor or business for him. For such a question might be construed as testing the witness's credibility, but with counsel withdrawing the question the record is barren of anything to contradict. The statement by Barger could not be admitted otherwise, since it would not have been proper to admit it on the ground that it was an admission of Barger's competency as proof that he was driving the car without permission, for Barger's admissions off the stand were not binding on the plaintiff as they are purely hearsay when offered to prove the facts stated therein. Dziadosc v. American Casualty Co., 114 N.J.L. 137, 176 A. 150; Center Garage Co. v. Columbia Insurance Co., 96 N.J.L. 456, 115 A. 401.

To permit the question to be asked on the broad ground that the whole inference to be gathered from Barger's testimony was that he was on an "errand" and "business" of Doctor Burns, and it was therefore proper to test his credibility, would be giving a broader function to its use than should be allowed, since unless confined to specific testimony that it was intended to contradict, even under the most positive instructions from the Court, a jury might accept it as proof positive on which ground it is inadmissible as above adverted to. The admissibility of it then, for the purpose of testing the witness's credibility, is far outweighed by its inadmissibility on the ground of hearsay and a proper discretion was exercised by the Trial Judge in its exclusion. I have long felt that such fine theorizing is to be avoided, whereas here it would be attributing a delicate sense of legal discrimination to a jury which in reality and in practice, I fear they never exercise.

■ (5) The next assignment of error is the Trial Judge's ruling that Exhibit No. 2 be excluded from the evidence. The record shows that it was offered solely for its relevancy to the question of permission and read as follows: "I, Thomas Barger, aged twenty-four, of Trenton Fairgrounds, Nottingham Way, Trenton, New Jersey, hereby agree to reimburse Dr. James Burns for the damage sustained to his automobile (which I understand is approximately $50.00). The damage to the car was the outcome of an accident occurring on Roosevelt Boulevard, Pennsylvania, while I was operating Doctor Burns' coach at the time of this accident I was on no business for Doctor Burns. I had no permission to use the car in Pennsylvania and was on my own personal business. I further agree to pay $5.00 per week to Fitzgibbon & Crisp Co. until the entire bill is paid. The foregoing statement subscribed to by me is true." This statement which, as is indicated, counsel for the garnishee offered only to show that the witness had no permission, is ruled by the assignment of error above, for likewise here the record is barren of any direct statement by the witness that he had permission. It shows that while counsel for the garnishee was questioning Barger, he stated that he had permission to use the car, and it was ordered stricken from the record by request of counsel for the garnishee. Its use here would be pure hearsay, as indicated by Dziadosc v. American Casualty Company, supra, and Center Garage Co. v. Columbia Insurance Company, supra. I think the ruling of the Trial Judge that "the question of whether there is permissive use is a question which the jury will have to resolve from the facts and circumstances. You can ask what instructions were given and what he did but the question of whether there was permission is a factual question for the jury", was a proper ruling with respect to the statement here involved.

■ (6) The garnishee has also assigned as error the failure of the Trial Judge to admit into evidence an exemplified copy of an action in the State of New Jersey in which James R. Burns was the plaintiff and Thomas Barger the defendant. Counsel for the garnishee first offered the same as contradiction of Barger's statement that no judgment had been rendered

against him in the case brought by Doctor Burns in New Jersey, but when the Court permitted the notation in the record of the fact that a judgment had been entered against the defendant, Thomas Barger, by the said James R. Burns, which would go to the credibility of Thomas Barger, counsel then offered the record for the purpose of proving that the matter of permission was res judicata. The action in question was a suit by Doctor Burns against Thomas Barger for damages incurred to the former's car while enroute to Philadelphia. The judgment was given by the District Court of Trenton in the sum of $67.50. The doctrine of res judicata means that a cause of action once finally determined without appeal between the parties, on the merits, by a competent tribunal, cannot be litigated by a new proceeding either before the same or any other tribunal. Bluefields S. S. Co. v. United Fruit Co., 3 Cir., 243 F. 1, 9. In the New Jersey case the plaintiff here, Joseph Shane, was not a party nor privy, and accordingly he could not be bound by the judgment in a New Jersey Court.

■ (7) The next assignment of error is the admission by the Trial Judge of testimony by Miss White, who was driving Doctor Burns' car at the time Barger solicited the work on the fender of the car, as to whether she made inquiry of Barger as to his being a mechanic or whether he operated a garage or repair shop. This testimony was pertinent and relevant and was properly admitted.

■ (8) The next assignment of error is the admission by the Trial Judge over objection of the garnishee wherein Doctor Burns was asked whether he inquired or ascertained from any other source than Thomas Barger whether he, Barger, was a mechanic or engaged in the repair business or operation of a car. This question was likewise pertinent and relevant to the issue and was properly admitted.

■ (9) The next assignment of error concerns itself with the Court's instruction to the jury wherein the Trial Judge stated that the defendant, Barger, said that Doctor Burns told him to fix the fender and in another place in the testimony he said he had no instructions given to him, whether to repair or to replace the fender. This instruction is substantially, if not exactly, in accord with the record.

■ (10) The seventeenth assignment of error concerns itself also with the charge of the Trial Judge to the jury wherein the Court said: "If, however, the transaction of going to Philadelphia was so closely related both as to the time when the instructions were given to Barger and also as to the general end to be accomplished that it could be said to be, in reality, one transaction, within the color of the authority granted, and was not a deviation therefrom, your verdict should be for the plaintiff on this issue of permission". This portion of the Court's charge with respect to the issue of permission read in connection with the whole context was proper in order for the jury to determine whether there was a deviation from the authority granted.

■ (11) The eighteenth assignment of error concerns itself with the Trial Judge's charge to the jury that from the facts and all the testimony and any fair implication that could be raised therefrom they should determine whether or not Barger had permission to operate the car, was proper in connection with the balance of the Court's charge.

■ (12) The nineteenth, twentieth and twenty-first assignments of error by the garnishee are all denied, the nineteenth assignment being merely a direction by the Court to the section of the policy which excludes agents or employes operating automobile repair shops, etc.; the twentieth assignment having to do with the Court's charge with respect to whether or not the defendant, Thomas Barger, was excluded under the terms of the policy, that is, whether he was engaged in the business of operating an automobile repair shop, public garage, sales agency, etc. With respect thereto the Court fairly put the factual question to the jury giving as its opinion, if this fixing was one occasional operation for the year, then the defendant Barger, was not engaged in operating an automobile repair shop, public garage, etc. This instruction was fair and proper under all the circumstances. The twenty-first assignment of error, also relating to the charge of the Court, was likewise fair and proper under the circumstances.

Accordingly, garnishee's motion for a new trial is denied.