Szawlinsky *v.* Campbell, Appellant.

Argued January 13, 1961. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Lynwood F. Blount,* for appellant.

*John Michael Doodan,* for appellee.

Opinion by Mr. Justice Musmanno, March 13, 1961:

On December 14, 1956, Michael Szawlinsky, the plaintiff, was seriously injured when he was struck by an automobile belonging to Honey Campbell, the defendant. He brought suit against Campbell and recovered a verdict of $10,000. From the trial court's refusal to enter judgment n.o.v. or a new trial, the defendant appealed to this Court.

The defendant argues here that the plaintiff's verdict may not be sustained because he was guilty of contributory negligence as a matter of law. In *Metro v. Long Transportation Company,* 387 Pa. 354, we affirmed the following cardinal rule regarding review of a trial record: "On ruling on a motion for judgment n.o.v. we are required to view the testimony in the light most advantageous to the plaintiff and to resolve all conflicts therein in his favor and he is to be given every benefit of every fact and inference of fact pertaining to the issues involved which may reasonably be deduced from the evidence; and in addition the plaintiff is entitled to have the evidence supporting his verdict considered and all the rest rejected."

In conformity with that rule, the story of the accident in this case may be reconstructed as follows. Michael Szawlinsky disembarked from a streetcar at the corner of 24th Street and Girard Avenue in Philadelphia at about 5:30 on the evening of December 14, 1956. From the sidewalk on the north side of Girard Avenue, he proceeded in a southwardly direction to cross Girard Avenue which, accommodating two streetcar tracks, runs east and west. Before committing himself to the crossing he looked to his left, that is toward the east, and observed automobile head-

lights 400 to 500 feet away and he assured himself he could easily negotiate the 40-foot width of Girard Avenue before the cars from the east arrived at the intersection.

Looking to his right Szawlinsky's view was limited to about 150 feet because of a curve in the street at this point. As he approached the third of the four rails in the direction he was heading, he now saw advancing from his right several cars traveling in an eastwardly direction. He stopped to allow these eastbound cars to pass him and, while in this stopped position, the defendant's car bore down on him from his left and struck him.

Appraising this picture of the event, reproduced from the record with the chalks, directions, and distances approved by the jury in its verdict, nothing appears to mar the legality of a prima facie case in behalf of the plaintiff. The defendant, however, would add something to the picture which, if accepted, would throw the entire image out of legal focus. The defendant says that when the plaintiff was only three feet away from the north curb of Girard Avenue, proceeding south across the thoroughfare, he saw automobiles only 50 feet away advancing toward him from his left. The defendant argues that, in the light of this situation, the plaintiff was guilty of contributory negligence in not retracing his steps to the curb only three feet back of him and thus avoiding the traffic onslaught from the east (the plaintiff's left).

The defendant builds this argument on a single answer given by the plaintiff in cross-examination. Szawlinsky had stated that before he started across Girard Avenue the cars on his left were 400 to 500 feet away. When he reached the center of Girard, and he again looked to the left, the cars were now 50 feet away. The cross-examiner then asked: "Mr. Szawlinski, where were you with relation to the

north curb of Girard Avenue when you saw the automobile lights to your left a second time."

Szawlinsky replied: "I don't know how far, but it was not too far to the curb."

The cross-examination continued: "Q. Would you say you were one foot away from the north curb line of Girard Avenue, sir? A. Which side? Q. The north curb line of Girard Avenue? A. *Maybe two or maybe three.* I don't know the exact number of feet. Q. The headlights are within 50 feet away from you to your left? A. Yes, about 50 feet. Q. Is it not a fact, Mr. Szawlinski, at that point when these cars were 50 feet away from you at your left, you could have gotten back on the sidewalk before they reach you? A. I could not go back . . . Q. Why? A. How can I go back when the cars are far away? I could not go back. Q. Why could you not go back? A. How can I go back when I am *going in the opposite direction?*"*

The jury could find from all the evidence, contrary to the defendant's argument, that the situation which confronted Szawlinsky when he saw the cars to his left 50 feet away, was not in fact what the plaintiff's single italicized answer suggest. He was much farther away than only two or three feet from the north curb of Girard Avenue.

Szawlinsky was testifying through an interpreter and an impartial reading of the record manifests clearly that at this particular point of the cross-examination Szawlinsky became confused.

The confusion, however, was quickly dissipated. When the cross-examiner, following up his supposed advantage that Szawlinsky had admitted he was only two or three feet away from his starting point, asked: "There was nothing physically to keep you from going back to the north curb line, was there?" he quick-

---

* All emphasis supplied by the writer of the opinion.

ly found that he had counted his hatched chickens prematurely. Szawlinsky replied: "Why should I turn back *when I crossed half the street?*"

This answer disclosed the true state of affairs. The plaintiff was halfway across the street when the defendant's car from the left was only 50 feet away. For the plaintiff to have turned and attempted a retreat to the north curb at this juncture could have been calamitous to him. Nothing perhaps can be more conducive to an accident than a pedestrian at a busy intersection running forward and backward in front of traffic like a baseball runner caught between the bases. Rarely does the baseball runner emerge from such a dilemma safely, and rarely does the pedestrian escape being tagged out by the bumper of the pursuing car.

The defendant argues in his brief that the "plaintiff is bound by the fatal admission made by him on cross-examination." But how fatal was that alleged admission? The plaintiff, when he got an opportunity to do so, corrected his "three-foot" answer by saying that he had "crossed half the street" when the defendant's car appeared from his left.

It would be a mockery of fair trial procedure to deny a plaintiff, or any witness for that matter, an opportunity to change an answer he has made when he states he misunderstood the question or, for any reason, it becomes clear that his first answer did not accord with the truth as he now sees it. Any person on the witness stand is but a human being with all the frailties and imperfections which often go with human recollection. Nervousness, self-consciousness, timidity and inability to adjust to a strange environment may cause a witness to trip unintentionally. But a witness is not to be regarded as a tightrope walker crossing over Niagara Falls when a misstep may plunge him into irreparable disaster.

The jury could easily have concluded that the plaintiff here tripped over a misunderstanding when he first said he was only three feet away from the north curb of Girard Avenue. In point of fact, defendant's counsel helped unwittingly to confirm that the plaintiff had either misunderstood or honestly erred in that answer. Obviously loath to see the assumed advantage of the three-foot answer slip away from him, defendant's counsel returned to the subject and asked the plaintiff: "As to the set of four headlights which you saw 50 feet to your left when you were three feet from the north curb line of Girard Avenue, do you of your own knowledge know which one of the automobiles struck you, if either one of them did."

It is to be noted that the cross-examiner shrewdly buried the "three-foot" proposition within verbiage which highlighted something else—the question as to which automobile struck him. But Szawlinsky detected the ambushed phrase, and now answered definitively and conclusively: "I was standing on the *third track not three feet from the sidewalk.* I had crossed *half the* street already."

Defendant's counsel cites the case of *Lynch v. Erie City,* 151 Pa. 380, in support of his argument. It is true that in that case Justice HEYDRICK, speaking for the Court, said: "It was incumbent upon the plaintiff to establish a prima facie cause of action resulting exclusively from the negligence of the defendant, or, in other words, a case clear of contributory negligence upon his own part, before the defendant need answer at all. If, being a witness in his own behalf, his testimony upon cross-examination disclosed such contributory negligence, it cannot be said that he had established such prima facie cause of action, though his examination in chief and other parts of his cross-

examination filled the full measure of proof required by the strictest rule."

Justice HEYDRICK, however, added this extremely important limitation to the above stated proposition, namely, *"By this it is not meant to say that a party who has made a slip on the witness stand may not explain it."*

That is all there is to this case.

The defendant's motions for judgment n.o.v. and a new trial are based entirely on the plaintiff's "fatal admission" of contributory negligence. Even at the best, from the defendant's point of view, the matter was entirely one for the jury's deliberation. The jury has spoken and the record supports its verdict.

Judgment affirmed.