Bodick *v.* Harcliff Mining Company, Appellant.

Argued April 13, 1966. Before ERVIN, P. J., WRIGHT, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ. (WATKINS, J., absent).

*Michael J. Boyle,* with him *Alexander Unkovic,* and *Meyer, Unkovic & Scott,* for appellant.

*John J. Kennedy, Jr.,* with him *Evans, Ivory & Evans,* for appellee.

OPINION BY SPAULDING, J., September 15, 1966:

This appeal is from the refusal of motions for a judgment n.o.v. and a new trial in a trespass action quare clausum fregit brought by the plaintiff to recover for damage to his house located near the Allegheny River in Perry Township, Armstrong County. Plaintiff alleged that debris from defendant's strip mine, located approximately one-half mile downstream, interfered with the normal flow of the river causing an ice jam, unusually high flood waters, and damage to his home.

The jury returned a verdict for plaintiff-appellee in the amount of $8500.

Appellee's house is located on the right bank approximately 300 feet from the river's edge. The appellant operates a strip mine on the same side of the river directly opposite a small island known as Black Fox Island. This island is located considerably closer to the left bank so that normally the main flow of the river is between the island and the right bank.

In 1957, appellant constructed a high wall of spoil, consisting of clay and shale, along the hillside overlooking Black Fox Island. During the spring and summer of 1958, the spoil slid down the hillside into the river channel between the island and the right river bank. The channel was between 200 and 250 feet wide at this point and the material extended midway into it.

The Allegheny River annually freezes in December and thaws in January or February. On January 22, 1959 about 11:00 a.m., the ice began to thaw, break up, and move down the river. According to the appellee, ice started jamming and piling up most heavily at the point opposite the mine where spoil was obstructing the free flow of the channel to the right of Black Fox Island. The water and ice reached its height about midnight when it came into appellee's house at a level of 11 feet above the first floor.

Mr. George Westerman, owner of a cottage about one-fourth of a mile below the appellee's house, also observed the spoil material obstructing the water's flow through the channel opposite the island. His cottage, approximately 250 feet from the right bank, was similarly damaged. He testified that the water and ice reached a level of 15 to 20 feet higher in areas above the obstruction than in areas below it. This was later confirmed by water markings on the trees along the river bank.

The appellant contends that the ice jam which actually caused this unusually high water level was lo-

cated further downstream and was in no way connected with its mining operations. The manager of the mine and its vice-president denied that the channel was blocked by their spoil material. Appellant introduced evidence that unusually high water marks were recorded about this time on both river banks and at considerable distances above and below their mine. It alleges that appellee's damage was caused by conditions generally prevailing throughout the river valley and not by any obstruction of the river channel resulting from the mining operations. Appellant asserts that the jury could only speculate upon the cause of the flooding and if the spoil material were a cause, it was too remote to be the proximate cause of the damage to appellee's property.

The doctrine of proximate cause is defined as: " 'That which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred.' " *Coyne v. Pittsburgh Railways Company,* 393 Pa. 326, 334, 141 A. 2d 830, 835 (1958). It does not follow that the spoil material from appellant's mine must be the sole cause of the damage. A defendant's negligence may be the proximate cause of an injury where it is a substantial, though not the only, factor in bringing about the injury. *Majors v. Brodhead Hotel,* 416 Pa. 265, 205 A. 2d 873 (1965); *Diakolios v. Sears, Roebuck & Company,* 387 Pa. 184, 127 A. 2d 603 (1956). Moreover, where negligent conduct concurs with an act of nature, the defendant is liable unless he can show that the other cause would have produced the injury independent of defendant's negligence. *Menarde v. Philadelphia Transportation Company,* 376 Pa. 497, 103 A. 2d 681 (1954); *Carlson v. A. & P. Corrugated Box Corporation,* 364 Pa. 216, 72 A. 2d 290 (1950).

Appellant relies upon *Shaw v. Susquehanna Boom Co.,* 125 Pa. 324, 17 A. 426 (1889), and *Fredericks v.*

*Pennsylvania Railroad Company,* 225 Pa. 23, 73 A. 965 (1909). In these cases, the Supreme Court found insufficient evidence to submit the question of proximate cause to the jury.

In *Shaw,* the plaintiff's home was damaged by an ice jam allegedly created by defendant's piers located in the water. The Court said: "There was not a scintilla to show that the works of the boom company had anything to do with the ice-jam which caused the injury to the plaintiff's property. . . . we were practically asked to assume that because there was an ice-jam in the river, the works of the boom company were the cause of it." *Shaw,* supra at 327, 328.

In *Fredericks,* the Court was presented with a similar factual situation. Defendant's dam was alleged to have caused an ice jam, which in turn damaged plaintiff's property. The plaintiff relied solely upon opinion testimony.

However, in *Duffy v. York Haven Water & Power Company,* 233 Pa. 107, 81 A. 908 (1911), it was shown that a dam constructed by defendant materially diverted the currents of a river. The Court held the evidence sufficient to show that the obstruction caused an ice jam, flooding, and damage to plaintiff's house which was located on an island above it.

In the present case, evidence was presented regarding the existence and extent of appellant's obstruction. On the issue of causation, the court below carefully concluded that sufficient evidence was introduced to justify submission to the jury, stating: "Plaintiff testified that not only did he view the jammed area and the flood thereafter but, in fact, he saw firsthand the ice enter into the channel and stop against the obstruction and pile up there. In conjunction therewith, he testified that the jam, once created, extended some distance back, which testimony was corroborated by his other witnesses who also personally observed the chan-

nel. This testimony of the Plaintiff deals directly with causation." We agree with the court below that the instant case is governed by the *Duffy* decision.

In considering appellant's motion for judgment n.o.v., we resolve all conflicting testimony in favor of the appellee and view the evidence in the light most advantageous to him. The verdict winner is entitled to have the evidence supporting his verdict considered and all the rest rejected. *Cobosco v. Life Assurance Company of Pennsylvania,* 419 Pa. 158, 213 A. 2d 369 (1965); *Brandon v. Peoples Natural Gas Company,* 417 Pa. 128, 207 A. 2d 843 (1965); *Szawlinsky v. Campbell,* 402 Pa. 651, 168 A. 2d 581 (1961). Here, the issue of causation was properly submitted to the jury.

Appellant contends that the verdict is against the evidence. On this, all of the evidence must be considered and its weight assessed to determine whether the court below abused its discretion in refusing a new trial. *Musser v. Shenk,* 192 Pa. Superior Ct. 471, 161 A. 2d 628 (1960). This we have done and we find no abuse of discretion.

Judgment affirmed.