Allstate Insurance Company, a Corporation, and Milford Fisher, Plaintiffs-Appellees, v. Lake Shore Mutual Insurance Company, a Corporation, Defendant-Appellant.

Gen. No. 48,340.

First District, Third Division.

November 15, 1961.

Norman S. Greenberg, and Samuel Ziv, of Chicago (Samuel Ziv, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (John M. Moelmann, Oswell G. Treadway, and D. Kendall Griffith, of counsel), for appellees.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

The controversy in this case is over the meaning of the words "automobile repair shop" which appear in an automobile liability insurance policy of the defendant, Lake Shore Mutual Insurance Company.

The policy was issued to Arthur Weiss who asked Milford Fisher to repair his auto. While driving the Weiss car Fisher had an accident. Fisher was sued in

the Municipal Court of Chicago where he was represented by his own insurance company, the plaintiff Allstate, under a liability policy which provided that it would protect him while driving someone else's auto. This protection was excess coverage, and was limited to any recovery over and above the insurance carried on the non-owned auto.

Allstate tendered the defense of the suit to Lake Shore on the ground that Fisher had permission to drive Weiss' car, that Weiss' policy with Lake Shore provided coverage for such permissive use and that Lake Shore was, therefore, the primary insurer. Lake Shore refused to defend Fisher.

This action by Allstate for declaratory judgment followed. Lake Shore answered that the Weiss policy did not cover persons who operated automobile repair shops and that Fisher was so engaged on the date of the accident. The policy was attached to the answer. The pertinent portion is as follows:

> "The insurance with respect to any person . . . other than the named insured . . . does not apply: (1) To any person or organization, or to any agent or employee thereof, operating an automobile sales agency, repair shop, service station, storage garage or public parking place, with respect to any accident arising out of the operation thereof, . . . ."

The trial court found that Fisher was not operating a repair shop, that Lake Shore was not entitled to assert the exclusion it was relying upon and that it had to defend Fisher and pay any judgment against him within the limits of its policy.

Arthur Weiss and his brother, Homer, were co-owners of a hardware store. Fisher was a customer of theirs and they learned that he repaired autos. They asked him to repair two business cars and their two

173

personal cars. Fisher had been a truck driver all his working life, made about $9,000 a year, and was employed on an excavating job prior to the accident with Arthur Weiss' car in February 1959. Bad weather had caused a temporary layoff and during this period he made deliveries for the hardware store and repaired the autos. Much of the work was done in an alley garage back of the building in which Fisher lived. The motor of one business car was overhauled and some work was done on the other and on Homer Weiss' auto. The garage was more or less of a two-car size and had but one 8' wide door. A boat about 18' long and 5' wide was on one side of the garage and the car being repaired had to be put in at a 45 degree angle so that there would be room to walk around it. As the work progressed the brothers advanced Fisher money to purchase necessary parts and tools and loaned money for a spray compressor to a man named Muncie, another customer of theirs and a neighbor of Fisher's, whom they had engaged to paint two of the cars.

Arthur Weiss testified that he visited the garage three or four times. He saw hand tools there but did not remember seeing power tools or business signs. He said he understood that Fisher paid one-half of the garage rent and Muncie paid the other half. He said that Fisher also worked on the auto of Sidney Findler, a neighboring business man, but he didn't know what work was done or where it was done. He also said that he heard Fisher make an appointment to fix another man's car.

Fisher testified that he did not repair autos as a regular job and did not maintain a shop. He said the garage was rented by his son for the son's own auto and that he was permitted to use it for the spare-time work on the Weiss autos. He said that he worked on the two business cars there but on no others. He put

174

a carburetor on Homer Weiss' auto in front of Homer's home and was about to make ignition repairs on Arthur Weiss' car when the accident occurred. He had, over a ten year period, made minor repairs on 8 or 10 autos, which were parked in the street, for friends and others who heard of him by word of mouth. Sometimes he got paid and sometimes he didn't. He earned nothing for such work in 1958, and in 1959 he made a total of $139, the amount paid him by the Weiss brothers. In the garage he had a few hand tools and Muncie had the compressor. He said that on the date of the accident the garage was occupied by his son, that he had picked up a battery at the hardware store, had installed it in Arthur Weiss' car at Weiss' home and was bringing the car back to the store to do the ignition work there when the accident happened. He acknowledged talking to Findler but said he did no work for him, but would have worked for him or for anyone else if it was something he could do, if he had the time and if he was paid.

There was no other testimony. Homer Weiss, Muncie and Findler were not called as witnesses.

It is clear from the foregoing evidence that Fisher did not operate a "repair shop" within the conventional meaning of those words: a building or room where mechanics or artisans make repairs by means of tools or machinery. He had no set place to do the occasional job which came his way. In a ten year period prior to the Weiss repairs no two jobs were done in the same place. The only time an enclosure of any kind was used was for the repairs on the two Weiss business cars, and even this temporarily-loaned small part of a garage was not available to him when he undertook to remedy the ignition difficulty of the Arthur Weiss car. At the time of the accident he was driving this car for the purpose of repairing it but he was not driving it to or from a repair shop, and the accident did

175

not arise out of the operation of a repair shop as required by the exclusionary clause of the policy.

The defendant argues that the clause is not to be taken literally, but that the intendment of the full exclusionary clause and of the words "operating a repair shop" applies to personalities as well as to locations, and that if a person is a repairman and holds himself out to the public as such, it makes no difference whether the business he accepts is done in a shop or on a street. Two cases are cited which interpret similar clauses and which support this argument. In Public Indemnity Co. of Newark, N. J. v. Yearwood, 50 Ga App 646, 179 SE 232, the owner had employed Ingram to repair his car. While operating the auto in connection with the repair work, Ingram, who was not in the regular business of repairing automobiles and who was doing this work to make some extra Christmas money, killed a minor. The court held that there was ". . . no substantial difference, for the purposes of automobile liability insurance, between an individual undertaking to repair an automobile for the owner thereof and a 'public garage' or 'automobile repair shop.' "

In Brower v. Employers' Liability Assur. Co., 318 Pa 440, 177 A 826, the court, in speaking about a professional chauffeur and mechanic named Brower who repaired automobiles at his home, said:

> "In using the term 'automobile repair shop' the policy did not mean an inanimate thing, but it was intended to exclude those engaged in the business of repairing automobiles, as this mechanic was, and under the most restricted use given to the words of the policy a repairman of automobiles, engaged in that business, was intended to be excluded from the risks assumed by the indemnity companies. He is expressly excluded."

176

There were strongly worded dissenting opinions in both the Brower and Yearwood cases. The dissident jurists said that to call persons like Brower and Ingram "automobile repair shops" was straining the construction of plain language.

Our view coincides with the one expressed in these dissenting opinions. Even if we were disposed to accept the majority view, our present case could still be distinguished from Brower on the ground that the court called Brower a professional mechanic and said that the term "automobile repair shop" was intended to exclude "those in the business of repairing automobiles, as this mechanic was. . . ." Fisher was not a professional mechanic and was not engaged in the business of repairing automobiles. The same distinction was drawn in Shane v. Commercial Cas. Ins. Co., 48 F Supp 151. The testimony in that case showed that a man named Barger, who had a collision in an auto he was repairing, had solicited the repair job, that his principal business was driving trucks, that he occasionally did some work on automobiles but had done none within the previous year. The court held that this testimony did not show that Barger was "engaged in the business of repairing automobiles."

Two cases consonant with the dissenting opinions are Pallasch v. United States Fidelity & Guar. Co., 329 Ill App 257, 67 NE2d 883 and Bosshardt v. Commercial Cas. Ins. Co., 124 NJL 54, 11 A2d 49. Pallasch, who was an employee of a gasoline service station, was asked by the wife of a regular customer to correct some ignition trouble in their auto which she left at the station. Repairs were prohibited at the station so, after working hours, Pallasch took the auto to his home garage where he and another employee worked on it. The following morning while returning the auto to the station he had an accident. The trial court had entered a judgment for the defendant insurance com-

pany notwithstanding a verdict for the plaintiff. In defending the appeal the company raised the same point in reference to the insurance policy as in the instant case. This court, in reversing, said that Pallasch had received permission to drive the auto for the purpose of repairing it, that he made the repairs as an individual and not as an employee or agent of the service station and that he did not operate an automobile repair shop.

While there was no evidence that Pallasch either had repaired other cars or held himself out to the public as being available to repair autos for hire, there was such evidence in the Bosshardt case. There the repairman had obtained and had completed other repair jobs. He was described as "a sort of itinerant automobile mechanic" who did "such work as he found it, there being no regularity to his engagements." The court found that he had no place of business of his own and usually did his repairing in the yard or driveway of his brother-in-law's home. The court held that neither his previous repair jobs nor his repeated use of the yard and driveway were proof that he operated an automobile repair shop.

The general explanation given for the exclusion of agents and employees of automobile sales agencies, repair shops, service stations, storage garages and public parking places, from the protection extended to all other permissive users by the omnibus clause of automobile liability policies, is that in such establishments a car owner has no control over or knowledge of the persons who drive his car. In other instances an owner is expected to exercise care in the choice of those whom he permits to use his car, and by protecting his car he is protecting the insurer. Buxton v. Randel, 159 Kan 245, 154 P2d 129; Paine v. Finkler Motor Car Co., 220 Wis 9, 264 NW 477; Libero v. Lumbermens Mut. Cas. Co., 141 Conn 574, 108 A2d

533; 47 ALR2d 550. This rationale loses much of its logic when we consider that the exclusion also applies to small service stations and one-man repair shops. However, the exclusion has been approved as a reasonable contractual limitation in those states where the law makes an automobile owner vicariously liable for injuries caused by the negligence of anyone who drives his car with his express or implied permission and where, as a consequence, all automobile liability policies contain omnibus clauses. Lumbermens Mut. Cas. Co. v. Indemnity Ins. Co. of N. A., 186 Va 204, 42 SE2d 298.

Neither the majority opinions in the Brower and Yearwood cases nor the contention of the defendant in this case, that the intendment of the exclusionary clause applies to individuals who do automobile repairing for the public irrespective of whether they operate repair shops, can be easily reconciled with the explanation for the exclusion. There is no lack of knowledge of, or absence of control over, the choice of the driver for his car when an owner selects an individual to repair it. The owner gives direct permission to someone he approves and who, presumably, he believes is qualified to drive the car competently.

If the exclusionary clause in the Lake Shore policy were intended to be applicable to an individual repairman, operating without a repair shop, the clause should have so stated. If exclusionary clauses were so worded, however, they might meet with difficulty in those states where liability insurance must cover permissive use of automobiles. Clauses so worded might run counter to statutes and might be construed as an unreasonable contractual limitation on an insurer's liability. Therefore, by keeping the exclusion as presently phrased, an insurer is in the sheltered position of having a clause which has been held to be a reasonable restriction on liability, and which also has been inter-

preted, as in the Brower and Yearwood cases, as applying to a repairman who has no shop. Thus, if the interpretation of these cases were to be followed there would be no necessity for an insurer to incorporate in a policy a further limitation which might prove untenable.

In the present case we have a repairman who was not operating a repair shop within the literal meaning of the exclusionary clause and to whom the commonly accepted reason for the exclusion does not apply. In our opinion the facts of the case do not bring Fisher within the exclusion of the defendant's policy.

The judgment of the Superior Court is affirmed.

Affirmed.

McCORMICK, P. J. and SCHWARTZ, J., concur.