## Steiner, Appellant, *v.* Ostroff.

Argued December 14, 1961. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

Before WATERS, J.

*Norman Shigon,* for appellant.

*Leon Rosenfield,* with him *Alfred Sarowitz,* for appellee.

OPINION BY MONTGOMERY, J., March 21, 1962:

On May 28, 1957, appellant-plaintiff was a passenger in a taxicab which was struck by defendant's car from the rear while it was stopped for a red light. No damage was done to the cab or to the car, and upon inquiry of the plaintiff immediately after the accident she replied that she had not been injured. However, in the summer of 1957 she entered this suit for damages, based on her contention that as she sat in the rear seat of the cab with her ankles crossed, her daughter's foot came down on her right ankle as a result of the impact. The daughter (6 or 7 years of age) was sitting next to her in the rear seat of the cab.

In her statement of claim appellant alleged the following injuries, viz., ". . . serious and severe personal injuries to her head, neck, body, back and upper and lower extremities as well as internally and to her nerves and nervous system. In particular, but not in limitation of any other injuries, the said traumatic incident, plaintiff suffered, by reason of a deep traumatic thrombophlebitis of the right calf and leg. Also, the traumatic incident aggravated, activated and accelerated any pre-existing ailments or conditions which the plaintiff may have had, including varicose veins, particularly of the right leg." Plaintiff-appellant's medical history discloses the following, viz., appendectomy, 1939; oothectomy, 1943; two Caesarean sections, 1949 and 1950; in 1955 she was involved in a head-on automobile collision and injured her right leg, compelling her to have it placed in a cast for two or three weeks; hernia repair, 1956; in February, 1958, she fell while walking upstairs and "broke a vein or something"; again in 1958 she fell on the sidewalk of the Rittenhouse Hotel and injured her left leg.

As a result of the accident under consideration appellant consulted Dr. Davitch the day after it happened and he strapped her ankle and told her that her ankle was sprained. He directed her to bathe it in warm salt water, and over the next two-month period he gave her heat treatments and diathermy. His bill was fifty dollars. He was not produced as a witness at the trial. In August of 1957, at the suggestion of her lawyer, she consulted a Dr. Lisker and saw him three times. Dr. Lisker diagnosed her condition as deep thrombophlebitis of the right calf and varicose veins of the right leg, *probably* aggravated by recent recurrent thrombophlebitis and a low-grade superficial thrombophlebitis. He recommended surgery and testified that in his opinion the traumatic thrombophlebitis was caused by the accident. His three observations of ap-

pellant were made August 1, 1957, March 7 of 1958, following her accident of February 28 of that year, and again on November 7, 1960.

On behalf of the defendant a Dr. Lieberman testified that he had examined plaintiff on defendant's behalf on July 12, 1957, and found varicose veins in both legs and that he diagnosed her injury at that time as a sprained ankle. Also, Dr. Turner testified on behalf of the defendant saying that he examined the plaintiff on February 28, 1958, when she fell in the Bonwit Teller store, and that thereafter he treated her for an injury to her right leg just below the knee on five occasions.

The contentions of the parties were a considerable distance apart, plaintiff contending that she had serious injuries which affected prior ailments, and the defendant contending that the extent of her injuries as a result of this accident being just a sprained ankle. The jury returned a verdict of $500, which seems to us to have been adequate if it accepted the defendant's contention that plaintiff's injuries were only a sprained ankle; and since there is evidence to support such contention, we would immediately overrule the assignment of error relating to the inadequacy of the verdict.

However, appellant raises two other questions which we shall examine; (a) that the medical testimony offered by the defendant should not have been accepted since it did not express the opinion of the doctor but only a conjecture (he is alleged to have said that plaintiff's condition could *possibly* have been caused by previous operations), and (b) the lower court erred in its charge to the jury by restricting its consideration of plaintiff's injuries to those that were the direct result of the accident and removing from its consideration the matter of "aggravation, activation, and/or acceleration of a pre-existing latent, dormant and asymptomatic varicose veins."

We find no merit in appellant's contention (a). There can be no doubt that in order to sustain a verdict recognizing a claim for personal injuries the plaintiff has the burden of proving that the injuries were the result of the accident, and to establish this the medical testimony must be sufficiently definite to overcome the idea that it is conjectural or a mere guess. *Florig v. Sears, Roebuck & Co.*, 388 Pa. 419, 130 A. 2d 445; *Menarde v. Philadelphia Transportation Company*, 376 Pa. 497, 103 A. 2d 681. However, we find no such rule governing the testimony offered to refute or contradict such an opinion. Such testimony would be in effect the same as might be elicited on cross-examination of the plaintiff's expert witness. It has been held that cross-examination may embrace any matter germane to the direct examination, qualifying or destroying it, or tending to develop facts which have been improperly suppressed or ignored by the plaintiff. *Short v. Allegheny Trust Company*, 330 Pa. 55, 198 A. 793.

A medical expert may testify as to medical facts indicative of conclusions differing from that offered by the plaintiff's expert witness, such as in this case that the phlebitis might have been caused by something other than the injuries plaintiff sustained in the cab accident. This would be a statement of fact based upon the physician's knowledge and not the expression of an opinion. It should properly be admitted for the purpose of weakening the opinion given by the plaintiff's expert. The fact that an expert refuses to venture a conclusion that a certain condition resulted from any particular cause, where there were, in his judgment, several possible causes, does not make his testimony a conjecture or guess. Rather it would be a refutation or qualification of the testimony of the plaintiff's medical expert wherein he does conclude that the plaintiff's condition resulted from a particular cause, thus indicating that the opinion given by plaintiff's expert was in fact a conjecture or guess.

Although the record has not been printed, we have examined the original charge of the court and find no improper restriction on the jury's right to consider subsequent developments as being caused by the accident. The jury were privileged to find that the subsequent surgical operations were a consequence of the accident on May 28, 1958, or from some other cause. Appellant's physician, Dr. Lisker, diagnosed the injury for which she required surgical treatment as "traumatic thrombophlebitis", as a result of her daughter's stepping on her foot in the cab accident. This was the issue decided by the jury, viz., was or was not the thrombophlebitis caused by the accident. We find no prejudicial error in the charge. It is complete and fair as the issue was established by appellant's medical testimony.

Judgment affirmed.