364 A.2d 1366

**Martha S. HAMIL, Administratrix of the Estate of Kenneth C. Hamil, Appellant,**

v.

**H. Woodrow BASHLINE, et al.**

Superior Court of Pennsylvania.

Sept. 27, 1976.

228

230

Henry S. Moore, Grove City, for appellant.

George Hardy Rowley, Voorhies, Dilley, Keck, Rowley & Wallace, Greenville, for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

PRICE, Judge.

The dispute between these parties has been before this court on a previous occasion: *Hamil v. Bashline*, 224 Pa. Super. 407, 307 A.2d 57 (1973), *allocatur denied*, 224 Pa.Super. xxxvi. The facts, detailed in the earlier opinion, may be briefly summarized as follows: Plaintiff-appellant's decedent, suffering from severe chest pains, was taken to the defendant-appellee hospital. One of the doctors on duty ordered the taking of an EKG. When informed that the EKG machine had malfunctioned, the doctor ordered the use of another EKG machine and then left the hospital. Another machine was not located, and the decedent was taken to Dr. Raymond Saloom's office in Harrisville, Pennsylvania, located four miles from the hospital. He died while Dr. Saloom attempted to take an EKG.

In the resulting wrongful death and survival actions, the lower court, at the conclusion of the first trial, directed a verdict in favor of the appellees, basing its decision on the purported failure of the appellant to establish

a causal connection between the appellees' conduct and the decedent's death. On appeal, this court reversed the judgment of the lower court and remanded the case for a new trial, basing its decision on § 323 of the *Restatement (Second) of Torts* (1965), *infra*. The new trial resulted in a jury verdict for the appellees, and from that judgment the appellant appeals. We affirm and hold the following: (1) proof that a defendant's conduct increased the risk of harm is not, under § 323, proof that the conduct caused the harm; (2) § 323 does require proof of a causal connection between defendant's conduct and plaintiff's harm; (3) in this case, the requisite causal connection was not shown.

Appellant contends that she is entitled to another new trial because the lower court erred in its instruction to the jury concerning causation. However, before we reach the issue of the validity of the court's instructions, we must answer a contention of appellees. Appellees, in effect, ask that the previous decision in this case be reconsidered. If this court's previous decision was erroneous, then appellees were entitled to the directed verdict they received in the lower court, and any error in the second trial was harmless. *Cf. Jaski v. West Park Daily Cleaners and Dyers, Inc.*, 334 Pa. 12, 5 A.2d 105 (1939); *Pears v. Shannon*, 329 Pa. 278, 198 A. 307 (1938).

At the first trial, appellant's expert, Dr. Cyril H. Wecht, opined as to the causal connection between appellees' conduct and the resulting harm:

> "In my opinion, the substantial chances that Mr. Hamil would have had for survival were terminated, were taken away from him by the failure by the initial hospital to have given him the kind of treatment and examination which he should have had under the circumstances that you have outlined."

Dr. Wecht testified that, in his opinion, given proper medical care, the decedent would have had a 75% chance of survival.

The trial judge struck Dr. Wecht's testimony and directed a verdict for the appellee, reasoning that "the testimony did not meet the standard of expert testimony requiring an opinion based on reasonable medical certainty that the death was in fact caused by defendant's failure to exercise reasonable care." On appeal, this court held that although the testimony was insufficient to prove causation under the normal standards for expert testimony, it was sufficient to allow the case to go to the jury under § 323 of the *Restatement (Second) of Torts* (1965). That section provides:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

(a) his failure to exercise such care increases the risk of such harm, or

(b) the harm is suffered because of the other's reliance upon the undertaking."

There is language in this court's earlier opinion indicating that under § 323, the causal connection between a defendant's conduct and a plaintiff's harm may be proved solely by evidence that the defendant's conduct increased the risk of harm:

"Subsections (a) and (b) permit that causal connection to be proved by evidence that defendant's failure increased the risk of such harm as was suffered by plaintiff or by evidence that the harm was suffered because of reliance on the defendant's undertaking." 224 Pa.Super. at 415, 307 A.2d at 61,

and

"Section 323 . . . [allows] . . . causal connection between the death and defendant's conduct to be proved by evidence that the risk of death was in-

creased by defendant's failure to exercise reasonable care . . . ." 224 Pa.Super. at 417, 307 A.2d at 62.

However, immediately following the above statement, the court acknowledged that the traditional causal connection must be found by the jury before liability may follow:

> "The defendant is not, under Section 323, liable merely for having increased the risk of death, but the evidence of the increased risk of death is under subsection (a) of that section for the jury's consideration on the factual issue whether the death was caused by defendant's failure to use reasonable care." 224 Pa.Super. at 417, 307 A.2d at 62.

Thus, the opinion indicates that after receiving evidence that the negligent conduct increased the risk of harm, the jury *may* conclude that the negligent conduct caused the harm. The problem with this theory is that an expert's testimony that is less than certain leaves the jury with insufficient evidence to make that conclusion.

### I.

By allowing an expert to testify as to causation, it is assumed that the jury does not have sufficient knowledge to confront the causation question on its own. Because a jury's verdict may not be based on speculation, an expert is required to testify with certainty, thus exposing the jury to facts which support a finding of causation. *See McMahon v. Young,* 442 Pa. 484, 276 A.2d 534 (1971). If an expert testified that conduct increased the risk of harm and *may have,* in fact, caused the harm, from what facts can the jury conclude that the conduct in fact *did* cause the harm? If the only evidence of causation is expert testimony, and if the expert, with all his training and experience, can only conclude that the conduct may have caused the harm, any conclusion as to causation on the part of the jury would necessarily be

based on speculation. It must therefore be admitted that a jury cannot be permitted to find causation solely from expert testimony of increased risk. The question then becomes whether § 323 purports to allow liability to attach to conduct which has not necessarily caused the harm, but which has increased the risk of harm which in fact results.

## II.

There can be no doubt that such an eventuality is not contemplated by § 323, and that § 323 requires a causal connection between a defendant's conduct and a plaintiff's harm. The section provides that an actor who meets the conditions of the section "is subject to liability to the other for physical harm *resulting from* his failure to exercise reasonable care. . . ." (emphasis added). *Webster's Third New International Dictionary* (1966) defines "result," *inter alia*, as: "to proceed, spring, or arise as a consequence, effect, or conclusion. . . ." If an event "arises as a consequence" of another event, if an event "results from" another event, then one of the events must have caused the other. This was implicitly recognized by the Supreme Court of Pennsylvania in *Lambert v. Soltis*, 422 Pa. 304, 221 A.2d 173 (1966), wherein the court used the words "as a result of" in referring to causation.

Thus, independent of subsection (a) and (b),[1] § 323 contains a requirement of causation that cannot be met solely by evidence of increased risk. In addition to increasing the risk of harm, the conduct must have caused the harm. Therefore, we must decide whether

1. Subsections (a) and (b) would seem to be conditions to liability. The actor is liable under § 323 only if "(a) his failure to exercise such care increased the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking." On this appeal, no issue concerning either of these conditions has been raised.

appellant's expert testimony sufficiently met the causation requirement of § 323, *i. e.*, whether it stated in sufficiently definite terms that the decedent's death resulted from appellees' failure to exercise reasonable care.

## III.

In Pennsylvania, expert testimony evidencing a causal link must conform to a standard of certainty. "[A]n expert witness [must] testify not that the injury in question might have been or even probably was caused by the alleged negligence, but . . . that in his professional opinion the result in question came from the cause alleged." *Houston v. Canon Bowl, Inc.*, 443 Pa. 383, 386, 278 A.2d 908, 910 (1971). *See also McMahon v. Young, supra; Niggel v. Sears-Roebuck & Co.*, 219 Pa.Super. 353, 281 A.2d 718 (1971).

The reason for this rule springs from two fundamental legal precepts. The first has already been mentioned: a jury cannot be permitted to speculate on the issue of causation, but must be given some concrete evidence on which to ground a conclusion.

The second precept is older and better established than the first: liability will not be imposed unless the plaintiff proves that the defendant's conduct was the cause of the harm in question. Where expert testimony can do no more than establish that the defendant's conduct probably caused the harm, any imposition of liability is an abrogation of these precepts. In such a situation, liability would be imposed for negligence, but for negligence that has not been proved to have caused any harm.

In this case, Dr. Wecht, an eminently qualified physician, testified unequivocally that the hospital's failure to provide the decedent with the kind of treatment that he should have had under the circumstances demonstrated an absence of reasonable care. He also testified unequivocally that the decedent's substantial chances for survival were terminated by the hospital's failure to provide him

with that treatment. Finally, Dr. Wecht testified that, even given proper treatment, it is not certain that the decedent would have survived. According to Dr. Wecht, he would have had only a 75% chance of survival.

The crux of appellant's position is that the decedent died because appellees unreasonably failed to save him. Appellant is not attempting to show that the decedent's death was affirmatively caused by appellees, but rather that his life was not saved as a result of appellees' negligent conduct. In this context, an expert would have to testify that, given proper medical treatment, Mr. Hamil would have survived. Dr. Wecht did not so testify.

It may be that no expert can ever testify that a person would have survived a heart attack. If it is wrong to forbid recovery under such circumstances, then the fault lies not within the requirement that expert testimony be certain, but within the requirement that there be a causal link between defendant's conduct and plaintiff's harm. If causation is to be regarded as an element of a cause of action for negligence, then expert testimony must meet a standard of certainty. The expert testimony in this case did not meet that standard and was properly stricken.

In view of the fact that appellees were entitled to a directed verdict, we need not consider the trial errors alleged by appellant. *Hamil v. Bashline*, 224 Pa.Super. 407, 307 A.2d 57 (1973), is overruled. The judgment of the lower court in favor of appellees is affirmed.

HOFFMAN, J., files a concurring opinion.

JACOBS, J., concurs in the result.

CERCONE, J., files a dissenting opinion, in which SPAETH, J., joins.

SPAETH, J., files a dissenting opinion.

HOFFMAN, Judge (concurring):

Appellant, plaintiff in a medical malpractice action, contends that the lower court erred when it instructed the jury on the issue of proximate cause. This case comes to us after a second trial which was ordered by our Court. *Hamil v. Bashline,* 224 Pa.Super. 407, 307 A.2d 57 (1973), *allocatur denied,* 224 Pa.Super. xxxvi. The Majority overrules *Bashline I.* While I agree with the reasoning of the Dissenting Opinion by CERCONE, J., which reaffirms and clarifies the holding of *Bashline I,* I do not agree that the charge of the lower court considered in its entirety was defective that we should reverse the judgment of the lower court.

The facts leading to the instant suit were developed at both trials and were summarized in the previous opinion of this Court: "[P]laintiff called the Bashline Hospital around 11:40 p. m. on May 31, 1968, advising the night supervisor, Margaret Montgomery, that plaintiff's husband, the deceased, aged 41, was suffering from severe chest pains. Plaintiff was told by Mrs. Montgomery to bring him to the hospital, and that a doctor was there. The deceased was taken to the hospital at approximately 12:15 a. m. June 1, 1968. The doctor assigned to emergency duty was not there and could not be located. Doctor Johnston, one of the defendants, was present and although informed by the night supervisor of the deceased's condition did nothing more than order an EKG[1] taken. The EKG machine did not function, apparently as a result of being plugged into a defective outlet. Its malfunction was confirmed by Dr. Johnston who ordered another machine be used and then he left the hospital. Another EKG machine was not located and the decedent, receiving no treatment, was taken immediately by the plaintiff to the office of Dr. Saloom in Harrisville, Penn-

---

1. An electrocardiogram (EKG) is a tracing showing the changes in electrical potential produced by heart contractions and is an important tool in diagnosing disruption of normal heart function.

sylvania. A short time after his arrival and during the process of taking an EKG, the deceased died." 224 Pa. Super. at 408, 307 A.2d at 58. Although the Bashline Hospital did not have a coronary care unit, testimony at trial established that it had available beds, oxygen, pain relieving drugs, and equipment to effect defibrillation, all of which are recognized as useful in the treatment of myocardial infarction.[2] Appellant's expert witness, Dr. Cyril H. Wecht, testified that, in his opinion, given proper medical care, Mr. Hamil would have had a 75% chance of survival. He testified that, in his opinion, the substantial chances that the deceased would have had for survival were terminated by the failure of the hospital to render the kind of examination which would have diagnosed the heart attack and by the consequent failure to provide prompt treatment. The appellees' expert, Dr. John B. Treadway, on the other hand, testified that nothing that the appellees could have done would have prevented the death of Mr. Hamil.

At the conclusion of the first trial, the court concluded that Dr. Wecht's testimony did not meet the standard of reasonable medical certainty required of medical expert testimony in establishing proximate cause. See *Houston v. Canon Bowl, Inc.*, 443 Pa. 383, 386, 278 A.2d 908, 910 (1971); *McMahon v. Young,* 442 Pa. 484, 276 A.2d 534 (1971); *Menarde v. Philadelphia Transportation Company,* 376 Pa. 497, 103 A.2d 681 (1954); *Hodgdon v. Kerr Salt Company,* 176 Pa.Super. 177, 106 A.2d 621 (1954). Because the court reasoned that the jury would be left to conjecture and surmise on the issue of proximate cause, it struck the testimony of Dr. Wecht and directed a verdict for the appellees. This Court reversed and held that the evidence of causation was sufficient to allow the case to go to the jury. We, therefore, awarded a new trial. Upon retrial, Dr. Wecht gave substantially the same tes-

---

2. Necrosis or death of heart muscular tissue caused by a decrease in flow of blood to the muscle cells.

timony; the defense witnesses also testified as they had at the first trial. The jury returned a verdict for the defendant; and, by special interrogatories, indicated that they found appellees negligent but found no proximate cause.

The Majority interprets our opinion in *Bashline I* to allow proof of a causal connection between a defendant's conduct and a plaintiff's injury solely by evidence that the defendant's conduct increased the risk of harm: "Thus, the opinion indicates that after receiving evidence that the negligent conduct increased the risk of harm, the jury *may* conclude that the negligent conduct caused the harm. The problem with this theory is that an expert's testimony that is less than certain leaves the jury with insufficient evidence to make that conclusion." (243 Pa.Super. at 233, at 1369.) The Majority holds that *Bashline I* misinterpreted § 323 of the Restatement (Second) of Torts (1965) to mean that evidence of an increased risk of harm may be equated with proof that the defendant's negligence proximately caused the harm. The Majority concludes that the holding of *Bashline I* violated the established principle that expert testimony must conform to a prescribed standard of certainty because *Bashline I* would allow a jury to infer from proof of an increased risk of harm caused by the defendant's negligence that, in fact, the harm was proximately caused by defendant's negligence: "The crux of appellant's position is that the decedent died because appellees unreasonably failed to save him. Appellant is not attempting to show that the decedent's death was affirmatively caused by appellees, but rather that his life was not saved as a result of appellee's negligent conduct. In this context, an expert would have to testify that, given proper medical treatment, Mr. Hamil would have survived. Dr. Wecht did not so testify.

"It may be that no expert can ever testify that a person would have survived a heart attack. If it is wrong

to forbid recovery under such circumstances, *then the fault lies not within the requirement that expert testimony be certain, but within the requirement that there be a causal link between defendant's conduct and plaintiff's harm.* If causation is to be regarded as an element of a cause of action for negligence, then expert testimony must meet a standard of certainty. The expert testimony in this case did not meet that standard and was properly stricken." (243 Pa.Super. at 236, at 1370) (Emphasis supplied). Therefore, the Majority would overrule *Bashline I.*

I believe that the problem created by the Majority opinion lies not with the requirement that there be a causal link between the allegedly negligent conduct of the defendant and the harm to the plaintiff, but rather with the application of a requirement of certainty for expert medical testimony which is poorly adapted to cases such as the one at bar. I do not agree that *Bashline I* must be overruled. It should be clarified. However, I agree that we should affirm the judgment of the lower court because I believe that the charge of the lower court on the issue of causation taken as a whole was adequate.

## I. *Medical Expert Testimony of Proximate Causation*

Contrary to the view expressed by the Majority, *Bashline I* did not eliminate the requirement that a plaintiff in a medical malpractice case must prove negligence, proximate causation, and injury. *Cohen v. Kalodner,* 236 Pa.Super. 124, 345 A.2d 235 (1975), interpreting *Bashline I,* held that a jury instruction tendered by an unsuccessful plaintiff was properly refused because it fostered the erroneous impression that the appellant could have recovered by proving only negligence and increased risk of harm and because it did not adequately address the necessity of proving causation in case proceeding on the theory of negligence enunciated in *Bashline I.* Although some language in *Bashline I* might give

rise to some misinterpretation the issue is not, as the Majority suggests, whether proximate cause must be proven when the plaintiff proceeds under § 323 of the Restatement (Second) of Torts (1965). It is clear that § 323 implicitly requires that the plaintiff establish a causal connection between the failure of a person to exercise reasonable care in the performance of services and the injury to the plaintiff if such harm results: "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, *is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care* to perform his undertaking, if (a) his failure to exercise such care increased the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking." Restatement (Second), Torts § 323 (1965) (Emphasis supplied). We must decide, therefore, not whether, but how the plaintiff who proceeds under § 323 must prove the required causal relationship.

The Majority states the general rule that medical expert testimony on the issue of proximate cause must conform to a standard of certainty: "[A]n expert witness [must] testify not that the injury in question might have been or even probably was caused by the alleged negligence, but . . . that in his professional opinion the result in question came from the cause alleged." *Houston v. Canon Bowl, Inc.,* 443 Pa. 383, 386, 278 A.2d 908, 910 (1971). See also *McMahon v. Young,* supra; *Menarde v. Philadelphia Transportation Co.,* supra; *Mudano v. Philadelphia Rapid Transit Co.,* 289 Pa. 51, 137 A. 104 (1927); *Vorbnoff v. Mesta Machine Co.,* 286 Pa. 199, 133 A. 256 (1926); *Moyer v. Ford Motor Co.,* 205 Pa.Super. 384, 209 A.2d 43 (1965); *DeMarco v. Fromyer Brick Co.,* 203 Pa.Super. 486, 201 A.2d 234 (1964); *Steiner v. Ostroff,* 197 Pa.Super. 461, 178 A.2d 799 (1962); *Schwartz v. Feldman,* 196 Pa.Super. 492, 175 A.2d 153

(1961); *Hodgdon v. Kerr Salt Company,* supra. Such a restrictive standard is not appropriate for cases like the instant one. In such cases we should only require that medical expert testimony establish to a reasonable degree of medical certainty that the increased risk of harm led to plaintiff's injury.

The plaintiff in *Menarde v. Philadelphia Transportation Company,* supra, was injured when defendant's streetcar started up before the plaintiff had alighted from the car. She sought to prove that the accident caused her to develop breast cancer. Her expert testified that he *believed* that the accident caused the breast cancer. The Court held that plaintiff's expert medical testimony was sufficiently certain to be admitted and considered by the jury on the issue of proximate cause.

In *Mudano v. Philadelphia Rapid Transit Co.,* supra, plaintiff was repairing a street when a car operated by the defendant struck a manhole cover plaintiff was carrying, which then fell to the ground injuring plaintiff's right heel. Sixteen months after the accident, an ulcer formed on plaintiff's injured heel. The plaintiff's expert testified that the infection was probably caused by the injury rather than some other cause. This testimony was deemed too equivocal to pass muster under the general rule requiring certainty when it was considered in combination with the testimony of the defense expert categorically denying a causal connection.

The common thread running through these cases is the plaintiff's reliance on medical expert testimony to link defendant's negligence to remote, sometimes unlikely results. In cases dealing with causal factors on such a gross scale, the court's insistence on certainty is hardly unreasonable. See also, *Houston v. Canon Bowl, Inc.,* supra; *Vorbnoff v. Mesta Machine Co.,* supra; *Moyer v. Ford Motor Co.,* supra; *DeMarco v. Fromyer Brick Co.,*

supra; *Steiner v. Ostroff,* supra; *Schwartz v. Feldman,* supra.

The facts of the instant case do not involve the operation of such large-scale forces and events; it involves the poorly understood activities of the human body. I do not believe that it is wise or necessary to apply the strict standard for admissibility and sufficiency of expert testimony, which has been applied in cases involving personal injury due to accident, to medical malpractice cases brought under § 323 of the Restatement. When the plaintiff has sustained injury, and that injury is preventable in a statistically definable percentage of cases if the patient receives prompt, competent treatment, it is unjust for our courts to deny recovery from one who has effectively terminated those chances of avoiding injury simply because the most that a medical scientist can truthfully say is that delay in diagnosis and treatment would *probably* lead to the poor result. While there is no way of determining within the realm of reasonable medical certainty whether or not the delay in diagnosis and treatment in any particular case was significant, an expert can *truthfully* testify to the effect that, in his opinion, the treatment employed fell below the level of acceptable community standards of medical practice, and increased the risk of harm, and that this deviation from acceptable methods of diagnosis and treatment was *a substantial factor in the overall prognosis of the disease.* See Zaslow, "Proof of Proximate Cause in Cancer Cases Alleging Delay in Diagnosis", 44 Pa.Bar Assn.Q. 574. This testimony should be sufficient to get to the jury on the issues of defendant's negligence and of proximate cause.

While the rule I propose admittedly falls below the standard of certainty required of expert testimony appropriate to the class of personal injury cases discussed above, I do not believe that it is a departure from estab-

lished rules of tort liability generally. It is well-settled that no presumption or inference of negligence arises merely because medical treatment or a surgical operation terminates in an unfortunate result which might have occurred even though proper care and skill had been exercised. *Lambert v. Soltis,* 422 Pa. 304, 221 A.2d 173 (1966); *Smith v. Yohe,* 412 Pa. 94, 194 A.2d 167 (1963). In medical malpractice cases which involve an appraisal of the care and skill of a physician, a lay jury must be guided by the testimony of experts because the jury lacks the necessary knowledge and experience to render an intelligent decision without it. *Denneny v. Siegel,* 276 F. Supp. 281 (E.D.Pa.1967) (applying Pennsylvania law); *Lambert v. Soltis,* supra; *Smith v. Yohe,* supra. Although a physician ordinarily warrants neither a cure nor favorable results, and a physician will not be held liable for a mere mistake in judgment, a physician's failure to employ recognized diagnostic techniques in order to form a plausible differential diagnosis can constitute actionable negligence. *Smith v. Yohe,* supra.

As noted, supra, it is obvious that a plaintiff must prove legal cause. See *Cohen v. Kalodner,* supra; *Hamil v. Bashline,* supra; Restatement (Second), Torts § 323 (1965); Cf. *Noon v. Knavel,* 234 Pa.Super. 198, 208, 339 A.2d 545, 550 (1975). "It is well established in Pennsylvania that in order to find that defendant proximately caused an injury it must be found that his allegedly wrongful conduct was a substantial factor in bringing about plaintiff's injury *even though it need not be the only factor. Diakolios v. Sears, Roebuck & Co.,* 387 Pa. 184, 127 A.2d 603 (1956); *Simon v. Hudson Coal Co.,* 350 Pa. 82, 38 A.2d 259 (1944); *Krauss v. Greenbarg,* 137 F.2d 569 (3rd Cir. 1943), cert. den. 320 U.S. 791, 64 S.Ct. 207, 88 L.Ed. 477, rehearing denied 320 U.S. 815, 64 S.Ct. 368, 88 L.Ed. 492; *Jenkins v. Nicholson,* 162 F. Supp. 167 (E.D.Pa.1958). It is equally well established that defendant's negligent conduct is not a substantial

factor in bringing about plaintiff's injury if [the injury] would have been sustained even if the actor had not been negligent. Restatement of Torts, § 432; *De Angelis v. Burns,* 404 Pa. 230, 171 A.2d 762 (1961); *Simon v. Hudson Coal Co.,* supra." *Majors v. Brodhead Hotel,* 416 Pa. 265, 271–72, 205 A.2d 873, 877 (1965). Thus, the fact that some other cause concurs with the negligence of the defendant in producing an injury does not relieve the defendant from liability unless he can show that such other cause would have produced the injury independent of his negligence. *Majors v. Brodhead Hotel,* supra; *Carlson v. A. & P. Corrugated Box Corporation,* 364 Pa. 216, 223, 72 A.2d 290 (1950).

The law is well settled that where negligent conduct concurs with an act of nature, the defendant is liable unless he can show that the other cause would have produced the injury independent of his negligent conduct. *Bodick v. Harcliff Mining Co.,* 208 Pa.Super. 471, 474, 222 A.2d 615 (1966). *Accord, Duffy v. York Haven Water & Power Company,* 233 Pa. 107, 81 A. 908 (1911). Thus, a defendant's negligence need not be the *sole* proximate cause only *a* proximate cause of plaintiff's injuries. See also *Bender v. Dingwerth,* 425 F.2d 378, 380–81 (5th Cir. 1970); *Rosario v. American Export-Isbrandtsen Lines, Inc.,* 395 F.Supp. 1192 (E.D.Pa.1975); *Agnew v. City of Los Angeles,* 134 Cal.App.2d 433, 286 P.2d 556, 559 (1955).

I would, therefore, conclude that the problem lies not with the requirement that a plaintiff proceeding under § 323 of the Restatement (Second) establish the existence of proximate cause, but rather from the imposition of a standard of certainty upon expert testimony that is impossible to meet in situations where the concurrence of forces precludes anything but a statement of probabilities.[3] If we require such a standard of certain-

3. In *Bialek v. Pittsburgh Brewing Co.,* 430 Pa. 176, 242 A.2d 231 (1968), the plaintiff instituted an action to recover for personal

246

ty, we bar recovery by plaintiffs who can prove that the defendant was negligent because he failed to adopt diagnostic or treatment procedures which in the medical community are recognized as indispensible in preventing precisely the type of harm which flows with statistical certainty from the absence of timely or proper medical intervention. If the plaintiff's expert owns up to the limitations of medical knowledge, the Majority would put the plaintiff out of court. If he retains an expert who is willing to perjure himself in order to meet the legally required omniscience which the Majority imposes, then he recovers. The honest victim bears the loss; the less

injuries he suffered when a bottle of beer allegedly exploded. The suit was based in part on the theory of Section 402A of the Restatement (Second), Torts. See *Webb v. Zern*, 422 Pa. 424, 220 A.2d 853 (1966). Plaintiff's testimony was that the bottle spontaneously exploded in his hand. The defendant bottle manufacturer sought to establish that the bottle had exploded due to an external impact. Plaintiff's expert, a physicist with experience in glass science, testified that he had examined the bottle fragments and concluded from the wide variation in thickness that the bottle was defective. He admitted that he could not positively determine the actual cause of the fracture because vital pieces of evidence were missing, and admitted that he could not exclude the possibility that the bottle fractured because of application of an external force. The trial court barred further testimony by plaintiff's expert on the cause of the fracture. The Supreme Court reversed and awarded a new trial saying: "Dr. Anderson testified only that he was unable to give a *positive* opinion on the cause of the bottle's fracture. This is not inconsistent with his ability to form an opinion based on less than certain evidence. A precise scientist who bases his opinion on an appraisal of probabilities is nonetheless an expert. In our view his opinion deserves jury consideration. Thus the trial judge did err in depriving plaintiff of the opportunity to have his expert express a full opinion on the cause of the bottle's failure." *Bialek v. Pittsburgh Brewing Co.*, supra, 430 Pa. at 181, 242 A.2d at 233. The testimony of the plaintiff's expert, the Supreme Court noted, suggested that the fracture of a glass bottle usually results from a concurrence of several causes, and that a slight external blow might be the proverbial straw that broke the camel's back. Thus, the Supreme Court recognized implicitly that when a scientific expert is attempting to deduce the cause of an accident he will necessarily reflect on probabilities. The Court seemed reluctant to require an expert to know the unknowable or to profess omniscience.

scrupulous recover. Our system of law should not tolerate such a rule.

The rule I propose is not without support in a growing number of jurisdictions. In *Hicks v. United States,* 368 F.2d 626 (4th Cir. 1966), the administrator of the estate of a young, deceased woman proceeded against a government hospital and physician on the theory of negligence. The doctor on duty failed to use appropriate diagnostic techniques which would have determined whether or not symptoms presenting as a gastroenteritis were, in fact, an intestinal obstruction. The former problem indicated relatively minor medicinal treatment and bed rest; the latter required immediate surgery to prevent the death of the young woman. The district court, applying Virginia law, dismissed the complaint because the evidence was insufficient to establish that the doctor was negligent or that his erroneous diagnosis and treatment was the proximate cause of the plaintiff's deceased's death. The 4th Circuit reversed and concluded that because there was no dispute that the doctor failed to use established diagnostic techniques, he was negligent, and that because there was no dispute that an operation would have saved the patient's life, proximate cause was established. Judge SOBELOFF further stated in well-reasoned, persuasive dicta: "When a defendant's negligent action or inaction has effectively terminated a person's chance of survival, it does not lie in the defendant's mouth to raise conjectures as to the measure of the chances that he has put beyond the possibility of realization. If there was any substantial possibility of survival and the defendant has destroyed it, he is answerable. Rarely is it possible to demonstrate to an absolute certainty what would have happened in circumstances that the wrongdoer did not allow to come to pass. The law does not in the existing circumstances require the plaintiff to show to a *certainty* that the patient would have lived had she been hospitalized and operated on prompt-

ly. *Harvey v. Silber*, 300 Mich. 510, 2 N.W.2d 483 (1942)." *Hicks v. United States*, supra at 632. See also *Schuler v. Berger*, 395 F.2d 212 (3rd Cir. 1968) (Construing Pennsylvania law to be in accord with the 4th Circuit Court of Appeals in *Hicks v. United States*, supra).

In *Rewis v. United States*, 369 F.2d 595 (5th Cir. 1966), the Court adopted the requirement that the plaintiff established by expert testimony to a reasonable degree of medical certainty that an increased risk of harm was the cause of his child's death when the plaintiff sought to recover for the child's fatal, misdiagnosed aspirin poisoning: "The ultimate burden of proof is, of course, on the plaintiff, who, to recover, must show both failure to give proper diagnosis or treatment and proximate causation. However, plaintiff's burden of going forward with evidence as to causation is satisfied and a prima facie case on causation is made out once he introduces evidence that the condition was one which would respond to medical treatment seasonably given and that there was a reasonable medical probability that had treatment been seasonably given the child would have continued to live. The question of reasonable medical probability is, of course, normally the subject of expert testimony." 369 F.2d at 603.

The Eighth Circuit Court of Appeals, applying Arkansas law, in *Jeanes v. Milner*, 428 F.2d 598 (8th Cir. 1970), held a doctor liable for failing to diagnose seasonably a particularly virulent form of throat cancer in an 11 year old patient. Expert testimony established that the treating physician had negligently diagnosed the growth as benign and had negligently failed to forward biopsy slides to a back-up laboratory for further study. During the period of delay, the cancer progressed from a stage I cancer (in which the cancer is still localized) to a stage II cancer (in which the cancer has spread to adjacent areas). Expert testimony established that the delay

resulted in a reduction in chances for survival from 35% to 24%. The Court held: "[W]e cannot agree with the District Court's holding that 'there is no evidence from which the jury could find that the delay of approximately one month in the transmission of [the] slides could have been the proximate cause of [Tommy's] failure to recover from his cancer, or to increase his pain and suffering or to shorten his life.' Nor can we agree that the jury could 'only find a verdict for the plaintiff based on speculation and conjecture.'" 428 F.2d at 604. The Court, thus, directly adopted the dicta of *Hicks* and construed it to be in accord with Arkansas law. See also *Stahlin v. Hilton Hotels Corp.*, 484 F.2d 580 (7th Cir. 1973) (Action for injury exacerbated by late diagnosis of a subdural hematoma was sustained on the basis of the *Hicks* case and on basis of Illinois law); *Reeves v. North Broward Hospital District*, 191 So.2d 307 (Fla. App.1966) (Action for wrongful death of plaintiff's adult son from subdural hematoma twelve hours after discharge from hospital operated by defendant).

The growing number of jurisdictions which have either expressly or impliedly followed the *Hicks* decision suggest that, if an exception to the general rule requiring absolute certainty of medical expert testimony on the issue of proximate cause in cases involving the negligent failure to diagnose properly and to treat progressively harmful or fatal medical conditions must be created in order to permit recovery, we should create that exception now. See, e. g., *McBride v. United States*, 462 F.2d 72 (9th Cir. 1972) (fatal heart attack, Court construing Hawaii law); *O'Brien v. Stover*, 443 F.2d 1013 (8th Cir. 1971) (Jaw cancer, Court construing Iowa law); *Bender v. Dingwerth*, supra (myocardial infarction, Court applying Texas law); *Brown v. United States*, 419 F.2d 337 (8th Cir. 1969) (myocardial infarction, Court applying Missouri law); *Clark v. United States*, 402 F.2d 950 (4th Cir. 1968) (blocked ureter, Court applying Virginia

law); *Watson v. United States,* 346 F.2d 52 (5th Cir. 1965) (arteriosclerotic condition of the leg, Court construing Georgia law); *Rosario v. American Export-Isbrandtsen Lines, Inc.,* supra (Court applying Pennsylvania law); *Cooper v. United States,* 313 F.Supp. 1207 (D.C.Neb.) (brucellosis, Court construing Nebraska law); *Steeves v. United States,* 294 F.Supp. 446 (D.C.S. Car.1968) (appendicitis, Court applying South Carolina law); *Thomas v. Corso,* 265 Md. 84, 288 A.2d 379 (1972) (auto accident victim abandoned in emergency room); *Cooper v. Sisters of Charity of Cincinnati, Inc.,* 27 Ohio St.2d 242, 272 N.E.2d 97, 103 (1971) (requiring that testimony establish that survival rate be better than 50%); *Walden v. Jones,* 439 S.W.2d 571 (Ky.1968) (spinal injury); *Johnson v. Vaughn,* 370 S.W.2d 591 (Ky.1963) (gunshot wound to the neck); *Agnew v. City of Los Angeles,* supra (requiring a showing of reasonable medical probability).

I would hold that the testimony of the appellant's expert in the instant case was sufficient to permit the issue of whether the appellee's alleged negligence was a substantial factor in causing the death of Mr. Hamil to go to the jury. The testimony of appellant's expert in the instant case, if believed would permit the inference that the appellee's negligence was a substantial factor, and, therefore, the proximate cause of Mr. Hamil's death. The testimony of Dr. Wecht, if believed, would have established to a reasonable degree of medical certainty that the failure to use an EKG resulted in the failure of the hospital to render prompt treatment, thus depriving the deceased of a substantial chance for life. When expert testimony establishes to a reasonable degree of medical certainty that the defendant's conduct was a substantial factor in causing harm to the plaintiff, I would permit that testimony to go to the jury.

## II.   The Jury Charge

Because I have concluded that the Majority places unwise and unnecessary restrictions upon the medical malpractice victim's right to recover by requiring more certainty of medical expert testimony than medical science can afford, I do not join in the Majority's opinion. However, I concur in the result because I believe that the lower court's charge on the issue of proximate cause was adequate.

The appellant contends that the following point for charge should not have been given: "Unless Mr. Hamil would have died without treatment, his chances for life were not terminated by any failure of the defendants to treat him and such failure cannot be considered a proximate cause of his death."   The jury returned a special verdict which established that the jury had found the appellees negligent but had concluded that the negligence was not the proximate cause of Mr. Hamil's death.   The appellant contends that the jury's verdict clearly indicates that it was confused by the court's instruction.

In determining whether a court's instructions to a jury are so erroneous as to require the grant of a new trial, we must consider the charge as a whole.   If the charge as a whole is not misleading or inaccurate, then we should not reverse despite some isolated misstatements or inaccuracies.   *Black v. A. E. Troutman Co.*, 385 Pa. 138, 140, 122 A.2d 201 (1956).

The court below charged the jury on the issue of proximate cause as follows:

"Now, so much for negligence, let's turn to the next thing that the plaintiff must prove.

"The plaintiff must prove that the negligence, if you find there was negligence, and I might say, if you don't find any negligence then the case ends there.   You don't need to worry about anything else because the plaintiff

must prove negligence in order to recover. The next thing she must prove is that the negligence was a proximate cause in the death of Kenneth Hamil.

"What do I mean by proximate cause? In order that the defendants be liable for the harm to Mr. Hamil, it is necessary not only that the defendants be negligent, and I have discussed that, but that the negligence of the defendants to be a legal cause of Mr. Hamil's death.

"The defendants negligent conduct is a legal cause of harm to the plaintiff or to Mr. Hamil if its conduct is a substantial factor in bringing about the death. The word, substantial, is used to denote the fact that the defendants' conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause of his death.

"Now along the line of proximate cause I want to charge you on Doctor Wecht's testimony, because Doctor Wecht, as I recall, testified that, in his opinion, had Mr. Hamil been given—admitted and put to bed and given the various drugs and other things that were available, in his opinion his chances of survival were 75% distinguished from 25%. If you accept Doctor Wecht's testimony and I say that because as I have indicated to you, you have the right to accept or reject anybody's testimony including Doctor Wecht's but not limited to his, if you accept Doctor Wecht's testimony that the risk of death was increased by the defendants' failure to exercise reasonable care, you are then permitted to use that testimony in determining whether or not death was in fact caused by the defendant's lack of reasonable care. I would point out to you that the defendant, the hospital and the doctors, is not liable merely for having increased the risk of death but the evidence of the increased risk of death is for your consideration along with all of the other evidence in the case on the factual issues of whether the death of Mr. Hamil was caused by the defendant's failure to use due care.

"In other words, did the hospital fail to use due care and, if they did, was it a substantial factor in causing Mr. Hamil's death. Now again, the plaintiff says, yes, and the plaintiff offers Doctor Wecht's testimony which you may consider along with all of the other testimony that death was the result of the failure to use due care.

"The defendant produces Doctor Treadway and, as I recall, Doctor Uberti. Doctor Treadway testified that this man would have died even if they had followed Doctor Wecht's method of putting him to bed and giving him treatment; that his death was caused by an electrical break down of the heart and he would have died anyhow.

"Now if you find that his death was caused, or a substantial factor in his death was the failure to give him care at the Bashline Hospital and that the failure was unreasonable then there would be liability on the part of the hospital. But on the other hand, if you find that the hospital was negligent but if you find that that was not a substantial factor in his death then there can be no recovery even if the hospital is negligent. The plaintiff must prove negligence and that the negligence was a substantial factor in causing death."

In addition to the foregoing charge, the court also granted the following points for charge tendered by the appellee which relate to the issue of proximate cause. (Points for charge are numbered in accordance with the appellee's tendered points for charge).

"Twelve, no liability—affirmed—no liability can be imposed upon these defendants for any acts of omission on either Doctor Saloom or Doctor Burke since although they were on the hospital staff there is no evidence that they were members of or agents of the hospital association. . . .

"Fourteen, in order for any of the defendants to be liable for Mr. Hamil's death it is necessary not only that the defendants have been negligent toward Mr. Hamil

but also that such negligence be a substantial factor in bringing about his death.  .  .  .

"Seventeen is affirmed. You cannot find for the plaintiff unless you find the fact that Mr. Hamil's death was caused by lack of care at the Bashline Hospital. In this connection you may consider the testimony of Doctor Wecht, but you should remember that Doctor Wecht is not able to state that Mr. Hamil would have lived had he been given certain treatment but only that his chances for life would have been better with such treatment and that is evidence, Doctor Wecht's testimony, if you accept is as evidence for you to consider in reaching the ultimate decision."

Finally, the court concluded its charge with:

"Now the plaintiff's position is that this man died as a result of the negligence of the Bashline Hospital Association and that he is entitled to damages as a result of that.

"The defendants' position is, (1) that there was no negligence bearing in mind that the size of the hospital. (2) That if there was negligence, negligence was not the proximate cause of his death, he would have died anyhow. Therefore there should be no remuneration. And that in a nut shell is the position of the parties."

Reviewing the charge of the court in its entirety I would hold that the issue of proximate cause was fully and fairly framed to the jury under the standards set forth in Part I of this opinion. Dr. Wecht testified that the decedent had a 75% chance of survival and that these chances were effectively terminated by the hospital's negligence. Because the testimony, if believed, established to a reasonable degree of medical certainty that appellees' failure to give prompt and proper treatment was a substantial factor causing the deceased's death, the jury could properly conclude that the appellees' negligence caused the death. Accordingly, it was proper for

the court to permit Dr. Wecht's testimony to go to the jury. If on the other hand, the jury believed appellees' expert that Mr. Hamil would have died anyway, then they were instructed to find for the appellees. Despite the fact that the court gave the somewhat confusing charge contained in appellees' point for charge number "sixteen", I do not believe that it was so misleading as to detract from the lengthy, substantially accurate explication of the law of proximate cause.

Because I would hold that the plaintiff's expert's testimony conformed to a standard of reasonable medical certainty, I cannot join with the Majority in overruling *Bashline I.* However, because I believe that the testimony of the appellant's expert was properly submitted to the jury and that the charge to the jury considered as a whole was adequate, I would concur in affirming the judgment of the lower court.

CERCONE, Judge (dissenting):

Since I do not agee that our prior decision in *Hamil v. Bashline,* 224 Pa.Super. 407 (1973), *allocatur denied,* 224 Pa.Super. XXXVI, substantially altered the law in Pennsylvania, I vigorously dissent. I remain convinced that our decision was consonant with well recognized tort principles of causation.

At the outset I should note that one quotation from the lead opinion by Judge Price highlights the reason for our difference with respect to the law applicable to the instant case.

"It may be that no expert can ever testify that a person would have survived a heart attack. If it is wrong to forbid recovery under such circumstances, then the fault lies not within the requirement that expert testimony be certain, but within the requirement that there be a causal link between defendant's conduct and plaintiff's harm."

To suggest that it is "wrong to forbid recovery," and then to lay the blame upon the tort theory of causation, is to misapprehend what "cause" means in its jurisprudential sense and to imply that the appellate courts are a sterile branch of the government of this Commonwealth.

Causation in the jurisprudential sense of that term does not involve the kind of mechanistic standard which is necessary to the inductive methodology of a scientist. In the law, causation standards involve considerations of policy which relegate theories of "but for causation" useless as anything more than starting points in the inquiry whether a defendant should be liable for the injuries sustained by a plaintiff. It would be difficult, if not impossible, to find a legal scholar who believes that causation in the law can be, or should be, limited to scientific precision. As one of many commentators has explained:

> "The essential weakness of the but-for test is the fact that it ignores the irresistible urge of the trier to pass judgment at the same time that he observes. It is an intellectual strait jacket to which the human mind will not willingly submit. The test was discredited even for philosophical usage by David Hume, its originator." [1]

Furthermore, in the law there is one class of cases where "but-for" causation simply fails altogether, yet liability attaches. The landmark decision of this class is *Anderson v. Minneapolis, St. P. & S.S.M.R. Co.*, 146 Minn. 430, 179 N.W. 45 (1920). In that case two fires merged to cause the destruction of plaintiff's property, but only one fire was due to the negligence of the defendant. The testimony clearly established that the fire for which defendant was not responsible would have destroyed plaintiff's property anyway. Obviously, one cannot say that "but for defendant's negligence the damage to plaintiff's property would not have occurred," for the facts refuted that proposition. Nevertheless, the defendant was held

1. Malone, Ruminations on Cause-in-Fact, 9 Stan.L.Rev. 60, 66–67 (1956).

liable and the rule established has found general acceptance:[2] "The defendant's negligence is a cause of the event if it was a material element and a substantial factor in bringing it about. Whether it was such a 'substantial factor' is for the jury to determine, unless it is so clear that reasonable men could not differ."[3] The reason for such a rule, again, lies in policy. One who suffers physical injury and the economic tragedy it brings about bears a hard burden. The victim is, because of the injury, least able to carry its cost; and, in view of his plight, society demands relief. From this demand springs the policy that the burden shifts from the victim to another if the other's part in the occurrence of the harm was sufficient that it appears that he *ought* to pay for it.[4] It is this subjective element of "oughtness" which both limits and extends liability in a fashion which procrustean notions of but-for causation are simply incapable of explaining.

Section 323 of the New Restatement of Torts, of course, establishes a standard to determine whether a particular kind of defendant's conduct is negligent. It leaves open to further proof the question of whether the increased "risk of harm" was a substantial factor in bringing about the harm. Professor Prosser, in this regard, points to the example of the man who throws a lighted match into a forest fire as a paradigm case of when an increased risk of harm cannot reasonably be determined to be a substantial factor in causing any ensuing harm.[5] In the vast majority of the cases, however,

---

2. Restatement of Torts, Second §§ 431, 433; W. Prosser, Law of Torts 240 (4th ed. 1971).

3. The rule applies regardless of whether the "concurring" cause originated negligently or naturally. See Restatement of Torts, Second § 432, Illustration 4.

4. Small, *Gaffing at a Thing Called Cause: Medico-Legal Conflicts in the Concept of Causation,* 31 Tex.L.Rev. 630, 654 (1953).

5. W. Prosser, supra note 2.

the question of whether the defendant's negligence was, more likely than not, a substantial factor in bringing about the harm is a question for the jury.[6]

The issue in the instant case is whether sufficient evidence was presented from which the jury might conclude that it was more likely than not that defendant's negligence was a substantial factor in causing decedent's heart attack to be fatal. It is clear to me that the evidence was sufficient for that purpose. As one commentator has explained:

> "Whenever it can be said with fair certainty that the rule of conduct relied upon by the plaintiff was designed to protect against the very type of risk to which the plaintiff was exposed, courts have shown very little patience with the efforts of defendant to question the sufficiency of proof on cause."[7]

On the contrary, when such proof is given, most courts impose an extremely strict standard of rebuttal evidence on the defendant,[8] and virtually no court would conclude that plaintiff has not made out a case for the jury.[9] In the instant case the evidence fairly indicated that the defendant negligently failed to diagnose and treat a heart attack, that defendant's negligence increased the risk that Mr. Hamil would die of a heart attack, and that Mr. Hamil in fact died of a heart attack. Defendant's rebuttal? Mr. Hamil may have died of a heart attack even if the hospital had not been negligent. To be sure, the jury

6. *Id.* at 251.

7. Malone, supra note 1, at 93. See also W. Prosser, supra note 2, at 242.

8. *Id.*

9. W. Prosser, supra note 2, at 242.
   Indeed, in a case which will be further discussed in the text below, a federal circuit court determined that such proof estops the defendant from showing that the harm would have occurred without its negligence. See *Hicks v. United States*, 368 F.2d 626, 632 (4th Cir. 1966).

might have concluded that Mr. Hamil's demise was so nearly inevitable when he entered the hospital that the hospital's negligence was not a substantial factor in bringing about his death. But, to hold that the proof was so insufficient that the trial court should have directed a verdict for defendant is not only unsupported by legal theory, but ignores the vast weight of the decided case law. When the law requires knowing the unknowable, matters of policy and factual likelihood are so inextricably involved that cases may rarely be taken from the jury.[10]

The mainstay of tort casebooks discussing this point is *Reynolds v. Texas & Pac. Ry.*, 37 La.Ann. 693, 698 (1895). In that case a fat woman was hurrying down the steps of a negligently unlighted stairwell in a railroad station. She stumbled and fell, thereby sustaining serious injuries. On appeal the court stated:

> "[W]here the negligence of the defendant greatly multiplies the chances of accident . . . and is of a character naturally leading to its occurrence, the mere possibility that it might have happened without the negligence is not sufficient to break the chain of cause and effect."

The rule found increasing support in a variety of fact situations; for, when the harm suffered by plaintiff is the very harm which defendant's duty was designed to prevent, courts have not required the plaintiff to further prove that defendant's compliance with its duty would have been availing. The following situations highlight that proposition: a woman fell overboard and drowned —no proof required that providing a rope on deck would have saved her;[11] A boy drowned in a swimming pool—

10. Malone, supra note 1, at 71–72.

11. *Zinnel v. United States Shipping Bd. Emergency Fleet Corp.*, 10 F.2d 47 (2d Cir. 1925). Therein the court stated: "We cannot say that there was *no likelihood* that a rope three feet above the deck . . . would not have saved the [woman].

no proof required that a lifeguard on duty would have saved him;[12] a man was injured when his car collided with a train—no proof required that the man would have heard a train whistle and avoided the collision;[13] and, a woman was injured as a result of a fire in a multistory garment factory—no proof required that the woman would have reached an additional fire escape had one been provided.[14] In all these cases the defendant sought to avoid liability by demanding that the plaintiff show that "but-for" the defendant's negligence the plaintiff would not have been injured. In all those cases the courts eschewed the need for the plaintiff to offer any such proof.

Nowhere, however, is such a strategem employed by defendants more commonly than in medical malpractice cases.[15] Nevertheless, the legal trends and the clear weight of authority now recognize that the purported defense is no defense at all. Numerous medical malpractice cases, which are indistinguishable from the instant case with respect to the genre of defense asserted, have readily found that plaintiff made out a sufficient case to reach the jury. In *Hicks v. United States,* 368 F.2d 626 (4th Cir. 1966) the court confronted the argument in the following context: A young female diabetic entered a naval dispensary suffering from acute abdominal pain. The doctor on duty negligently failed to diagnose the severity of her condition—an intestinal blockage which would have required immediate surgery if the woman were to survive. The doctor prescribed medication and

. . . ." *Id.* at 49. *Accord, Kirincich v. Standard Dredging Co.,* 112 F.2d 163 (3rd Cir. 1940).

12. *Rovegno v. San Jose Knights of Columbus Hall,* 108 Cal.App. 591, 291 P. 848 (1930).

13. *New Orleans & N. E. Ry. v. Burge,* 191 Miss. 303, 2 So.2d 825 (1941).

14. *Kohn v. Clark,* 236 Pa. 18, 84 A. 692 (1912).

15. See D. Harney, Medical Malpractice § 4.1 (1973).

sent the woman home. Shortly thereafter the woman died of a massive hemorrhage caused by the blockage. The hospital's defense was that there was no proof that the woman would have survived even if surgery had been performed. The circuit court responded:

"When a defendant's negligent action or inaction has effectively terminated a person's chance of survival, it does not lie in the defendant's mouth to raise conjectures as to the measure of the chances that he has put beyond the possibility of realization. If there was any substantial possibility of survival and the defendant has destroyed it, he is answerable. Rarely is it possible to demonstrate to an absolute certainty what would have happened in circumstances that the wrongdoer did not allow to come to pass." *Id.* at 632. See also *Harvey v. Silber,* 300 Mich. 510, 2 N.W.2d 483 (1942).

In *Rewis v. United States,* 369 F.2d 595 (5th Cir. 1966) the court found the hospital liable for failing to diagnose aspirin poisoning resulting in an infant's death. In so finding the court stated that there was no need for expert testimony to establish "to a reasonable degree of medical certainty" that prompt diagnosis would have saved the child's life.

Perhaps *Jeanes v. Milner,* 428 F.2d 598 (8th Cir. 1970) offers the most dramatic example of the application of the rule. In that case a young boy was taken to a doctor because of a lump and soreness in his throat. When antibiotics failed to relieve the boy's condition, further examinations led the treating physician to order biopsies. Due to negligence, the slides were not forwarded to the pathologist for more than a month and the boy's condition worsened. Ultimately, the lump in the boy's throat was diagnosed as malignant. Radio-therapy led to complete regression of the throat cancer, but by then the cancer was systemic and the boy subsequently died of a cancer in his stomach. Expert testimony for the plaintiffs established that during the delay in for-

warding the slides to the pathologist, the boy's condition deteriorated from stage one to stage two cancer, reducing his chances for survival from thirty-five per cent to twenty-four percent. The circuit court found that sufficient evidence was presented to permit the jury to determine that the failure to promptly diagnose the boy's condition was a substantial factor in bringing about his death.

In other cases, where a doctor or hospital did not subject a patient suffering from classic heart attack symptoms to an electrocardiogram, the courts have declined to require that the plaintiff prove with reasonable medical certainty that the decedent would have survived if his condition were properly diagnosed. See *Brown v. United States*, 419 F.2d 337 (8th Cir. 1969); *O'Neill v. Montefiore Hospital*, 11 A.D.2d 132, 202 N.Y.S.2d 436 (Sup.Ct. 1960).

Finally, even prior to our decision on the first appeal of the instant case, Pennsylvania law was not construed to require the result which the lead opinion suggests. In *Schuler v. Berger*, 275 F.Supp. 120 (E.D.Pa.1967), aff'd 395 F.2d 212 (3rd Cir. 1968), in affirming the judgment for plaintiff, the court expressly referred to its obligation to apply Pennsylvania law to the following facts: A young woman died some time after childbirth due to a negligent failure to diagnose peritonitis (caused by diverticulitis). In citing *Hicks v. United States* with approval, the court stated that the negligent diagnosis may be deemed to have caused the woman's death even though "it is not possible to demonstrate conclusively that the precaution would in fact have saved the victim." *Schuler v. Berger*, 275 F.Supp. at 124. Nor has our former decision in the instant case been questioned as demarking a change in the law of this Commonwealth. See *Rosario v. American Export-Isbrandtsen Lines, Inc.*, 395 F.Supp. 1192, 1210 (E.D.Pa.1975).[16]

16. Similarly, although the denial of allocatur from a Superior Court order remanding this case for a new trial does not neces-

In turning to the evidence presented in the instant case, Dr. Wecht, whose eminent qualifications were set forth in our previous opinion in this case, testified that had Mr. Hamil been subjected to an EKG and provided with the medication and facilities available at Bashline Medical Center, he would have had a seventy-five per cent chance for survival. Dr. Wecht also opined that "the substantial chances that Mr. Hamil would have had for survival were terminated, were taken away from him" because of the hospital's negligence. What more positive proof of "causation" can reasonably be required by the law? Even if Dr. Wecht had only testified that Mr. Hamil's chances for survival were reduced from three-in-four to one-in-four, the jury could nave concluded that it was *twice as likely* that Mr. Hamil died because of the negligent diagnosis rather than because his condition was necessarily fatal. In *Christie v. Callahan*, 75 U.S. App.D.C. 133, 124 F.2d 825, 827 (1941), Judge (later United States Supreme Court Justice) Rutledge noted:

> "Malpractice is hard to prove. The physician has all of the advantage of position. . . . What therefore might be slight evidence when there is no such advantage, as in ordinary negligence cases, takes on greater weight in malpractice suits."

The lead opinion in the instant case demands not less, but more.[17]

To conceive of an event without countless causes is impossible, and the but-for standard of causation alone pro-

sarily constitute approval by the Supreme Court of the rationale espoused in support of that order, it is likely that the Supreme Court would have granted allocatur had our former decision substantially altered the law as the lead opinion suggests in order to avoid its application in cases like *Rosario v. American Export-Isbradtsen Lines, Inc.,* supra.

17. Indeed, one commentator suggests that it is futile for the law to require more of a medical expert than Dr. Wecht offered in the instant case. "To aggravate aggravation, to accelerate acceleration, to make the inevitable more inevitable are foreign to the expert in medicine." *Small,* supra note 4.

vides no clue as to which of those causes is the legally responsible cause.[18]  I submit that the question of cause in this case asks whether a hospital *ought to be legally responsible* when its negligence increases the risk of harm to a patient, and the increased risk of harm can be said to be a substantial factor in bringing about that harm. As the cases and commentary cited above indicate, the clear weight of authority establishes that hospitals should be so held.  A majority of this court has also agreed with that conclusion when this case was last before us.  I find no reason to alter our judgment now, especially by further confusing an already confused, albeit critical, concept in the law of torts—causation.

Having determined that our decision and rationale in this case, when it was previously before us, rested on firm ground and should not be overruled, I now turn to appellant's allegation that the trial court erroneously instructed the jury with respect to causation.

The hospital submitted a point for charge to the court which was adopted with minor modification.  Over appellant's objection the court charged:

> "Unless it is certain that Mr. Hamil would have died without treatment, his chances for life were not terminated by any failure of the defendants to treat him and such failure cannot be considered a proximate cause of his death."

Special interrogatories of the jury proved that the jury had found that the hospital was negligent, but that its negligence was not a proximate cause of the decedent's death.  Given the special interrogatories, obviously, if the charge was erroneous, and was not cured by other portions of the court's instructions, we must grant appellant a new trial.

The charge as given was based upon *Hicks v. United States, supra,* where the expert testimony demonstrated

18.  W. Prosser, supra note 2, at 239.

that the deceased had no chance for survival once the doctor failed to diagnose the intestinal blockage—immediate surgery offered the only hope. However, as the other cases discussed above establish, there is no requirement that the victim, or his heirs, show that the harm which befell him was the only possible effect of the defendant's negligence. Most notably, in *Jeanes v. Milner,* supra, plaintiff's evidence established that decedent still had a twenty-four per cent chance of survival even after the diagnosis of cancer was negligently delayed. Surely, everyone would have been astounded in *Reynolds v. Texas & Pac. Ry.,* supra, had the court required the portly Ms. Reynolds to prove that it was impossible for her not to have fallen down the steps once the stairwell was darkened. Such a principle of inevitability is simply unknown to the law of torts.

Indeed, the trial judge seems to have recognized that the charge, if literally read, was error, and has not attempted to justify it on that basis. Rather, the judge characterized it as a "grammatical nightmare," which could only be understood to mean *"Since* it is certain that Mr. Hamil would have died . . ." instead of *"Unless* it is certain that Mr. Hamil would have died. . . ." I cannot agree. The charge, standing alone, can only be sensibly read to mean that the jury could not return a verdict for plaintiff if they found that Mr. Hamil had any chance for survival when he left the hospital. Since the principle set forth in *Hicks* is not limited to the facts of that case, the charge was erroneous.

I am mindful of the proposition set forth in *Black v. A. E. Troutman Co.,* 385 Pa. 138, 140, 122 A.2d 201, 202 (1956) where the Court said:

"In determining whether a court's instructions to the jury are erroneous we must consider that charge as a whole, and if it is not misleading we will not reverse, even though there be some inaccuracies or misstate-

ments. Error cannot be predicated upon isolated excerpts, if, when read with the remainder of the charge, a true and correct charge is revealed. . . ."

With that in mind appellee refers us to other areas of the court's thirty-six page charge which, it asserts, cures any error committed by incorporating appellee's suggested point for charge. While the court correctly charged the jury that to be liable the hospital's negligence must have been a substantial factor in bringing about Mr. Hamil's death, nothing in the charge militated against the conclusion that the jury necessarily must have drawn from the erroneous point—to be a "substantial factor," the hospital's negligence must have terminated whatever chance Mr. Hamil had for survival. Although it appears that the court did not realize the full implication of the suggested point when it charged the jury,[19] I cannot ignore the substantial likelihood (especially in light of the special interrogatories) that the error contributed to the verdict. Therefore, reluctantly I would reverse and remand for a new trial.

For the foregoing reasons I would refuse to overrule our prior decision in *Hamil v. Bashline*, 224 Pa.Super. 407, 307 A.2d 57 (1973), and would reverse and remand for a new trial.

SPAETH, J., joins in this dissenting opinion.

SPAETH, Judge (dissenting):

As I read their respective opinions, Judge Hoffman and Judge Cercone agree on the law of proximate cause. On this, I am with them both. I join Judge Cercone in dissent because I think the lower court's charge was erroneous.

---

19. Obviously, since Dr. Wecht testified that other people in Mr. Hamil's condition might have survived despite the hospital's negligence, the court would have directed a verdict for appellee if it fully subscribed to the position set forth in the point for charge.